(December 5, 1911.)

## FRED UNFRIED and SYLVIA UNFRIED, His Wife, Respondents, v. WILLIAM A. LIBERT, Appellant.

[119 Pac. 885.]

APPEAL—JOINDER OF ACTIONS—PERSONAL PROPERTY—DAMAGES.

(Syllabus by the court.)

1. *Held*, the appeal was taken within the time provided by the statute and the rules of this court.

2. Under the provisions of Rev. Codes, sec. 4169, several causes of action, all arising out of the same transaction, may be united in the same action, and allegations showing separate items of damages growing out of the same facts may be alleged as a part of the same cause of action.

3. Where objectionable and improper matters are alleged in a complaint and are stricken from such complaint because the same do not constitute any part of the cause of action, and are of such character as would prejudice the jury against the defendant, it is error for the trial court to permit counsel to discuss or comment upon such matters in his opening statement to the jury, and it is error also to admit evidence in relation to such matters.

4. Where personal property is seized and taken possession of unlawfully and without authority of law and is thereafter retained and converted to the use and benefit of the person taking such possession, in an action for damages by the owner of such property for conversion of the same, the plaintiff is entitled to recover, as a general rule, the market value of such property at the time the same was taken.

5. Where U. and U. give a mortgage to L. upon certain sheep consisting of "1200 head of ewe sheep and the increase thereof and 300 head of two year old wether sheep," and L. commences proceedings to foreclose said mortgage and applies to the court for

the appointment of a receiver, and such receiver takes possession of said mortgaged property and holds the same for L., and the court thereafter revokes the order appointing said receiver and such receiver thereafter continues in possession of said mortgaged property for L., and L. retains possession of said personal property until judgment is obtained in said foreclosure proceedings and execution issued, and levy is made upon a portion of said mortgaged property and the same is sold and applied upon the foreclosure judgment, and the portion of the property not levied upon is not returned to U. and U. and no account is given of the same, U. and U. in an action for conversion may recover the market value of the property so taken and unaccounted for.

6. Exemplary or punitive damages cannot be recovered unless the evidence shows clearly that the action of the wrongdoer is wanton or gross or outrageous, or where the facts are such as to imply malice and oppression.

7. The evidence in this case examined and held not to show wilful malice or fraud or gross negligence on the part of the appellant in the taking of the property, the value of which is sought to be recovered in this action.

APPEAL from the District Court of the Second Judicial District for Nez Perce County. Hon. E. C. Steele, Judge.

Action to recover damages for the conversion of personal property. Judgment for plaintiff. Defendant appeals. Judgment modified.

Charles L. McDonald, and Ben F. Tweedy, for Appellant.

The order vacating the appointment of the receiver did not require appellant to restore possession of the property to respondents nor adjudicate that he did not have the right to keep possession of the property pending the foreclosure action. The order being void did not, under the circumstances herein, deprive him of the right to keep possession. (*Atkinson v. Burt*, 65 Ark. 316, 53 S. W. 404.)

The court gave no instruction as to gross negligence, and there could be no recovery of exemplary damages for negligence unless it is gross or malicious. (13 Cyc. 110.)

"Simple negligence will not justify an award of punitive damages." (*Spencer v. San Francisco Brick Co.*, 5 Cal. App. 126, 89 Pac. 851.)

Argument for Respondents.

"A tort committed by mistake in the assertion of a supposed right or without any actual wrong intention and without such recklessness or negligence as evinces malice or shows disregard of the rights of others will not warrant the giving of punitive damages." (*Lyles v. Perrin,* 119 Cal. 264, 51 Pac. 332; *Mabb v. Stewart,* 133 Cal. 556, 65 Pac. 1085; *Atchison T. & S. F. R. Co. v. Chamberlain,* 4 Okl. 542, 46 Pac. 499; 2 Sutherland on Damages, 3d ed., pp. 1082, 1085, 1092, 1094, 1129.)

"When the mortgagee takes property under the mortgage, does not deny the ownership of the mortgage, but holds it for the purpose of legally foreclosing the mortgage and selling the property, never denying the right of the mortgagor to redeem, he cannot be guilty of conversion, malicious or otherwise." (*Howery v. Hoover,* 97 Iowa, 581, 66 N. W. 772.)

"If the mortgagee takes the mortgaged property and holds it adversely, denying the right of redemption, he cannot charge for necessary expenses." (*Howery v. Howery, supra; Booth v. Baltimore Steam Packet Co.,* 63 Md. 39.)

In the state of Washington exemplary damages cannot be recovered in any civil action without being specially authorized by statute. (*Woodhouse v. Powles,* 43 Wash. 617, 117 Am. St. 1079, 86 Pac. 1063, 11 Ann. Cas. 54, and other Washington cases.)

The malice for which exemplary damages are recoverable under the laws of any state is criminal in nature, and the courts of Idaho are not engaged in enforcing the *quasi*-criminal laws of any other state. (13 Cyc. 106; *Murphy v. Hobbs,* 7 Colo. 541, 49 Am. Rep. 366, 5 Pac. 119; *Fay v. Parker,* 53 N. H. 342, 16 Am. Rep. 270; *Brown v. Swineford,* 44 Wis. 282, 28 Am. Rep. 582.)

I. N. Smith, James L. Harn, and Clay McNamee, for Respondents.

The application for receiver was under a special statute. The order appointing a receiver was void for want of jurisdiction. (*Libert v. Unfried,* 47 Wash. 182, 91 Pac. 774.)

His possession under a special statute, taken through void process, cannot be changed, nor can it ripen into a valid possession under the mortgage. (*Jones v. N. P. Fish Co.,* 42 Wash. 332, 114 Am. St. 131, 84 Pac. 1122, 6 L. R. A., N. S., 940.)

The provision of the mortgage does not authorize taking possession in any other manner except by due process of law, and when Libert took possession forcibly he was a trespasser. (*McClellan v. Gaston,* 18 Wash. 472, 51 Pac. 1062; *Richter v. Buchanan,* 48 Wash. 32, 92 Pac. 782; *Pickle v. Smalley,* 21 Wash. 473, 58 Pac. 581; *Jacobson v. Aberdeen Packing Co.,* 26 Wash. 175, 66 Pac. 419; *Rein v. Callaway,* 7 Ida. 634, 65 Pac. 63; *First Nat. Bank v. Steers,* 9 Ida. 519, 108 Am. St. 174, 75 Pac. 225; *Willows v. Rosenstein,* 5 Ida. 305, 48 Pac. 1067.)

The return of the sheriff shows that he made only a paper levy, and this was clearly insufficient and rendered the sale void. (11 Am. & Eng. Ency. of Law, 2d ed., p. 655; 17 Cyc. 1085, note 47.)

It was impossible for the sheriff of Asotin county to have made a levy, as Libert had the sheep outside his jurisdiction and in Idaho. The sale was therefore void. (*Rix & Stratford v. Silknitter,* 57 Iowa, 262, 10 N. W. 653; *Gilman v. Williams,* 7 Wis. 329, 76 Am. Dec. 219; *Wells v. Price,* 6 Ida. 492, 56 Pac. 266; *Byrd v. Forbes,* 3 Wash. Ter. 318, 13 Pac. 715; *Cedar Rapids Pump Co. v. Miller,* 105 Iowa, 674, 67 Am. St. 322, 75 N. W. 504; *Pitkin v. Burnham,* 62 Neb. 385, 89 Am. St. 763, 87 N. W. 160, 55 L. R. A. 280.)

A void process protects no one. (Freeman on Execution, sec. 100.)

A mortgagee who takes possession in a manner other than by due process of law or agreement of the parties is wrongfully in possession and a trespasser. (*Pickle v. Smalley,* 21 Wash. 473, 58 Pac. 581; *Marchand v. Ronaghan,* 9 Ida. 95, 72 Pac. 731; *Rein v. Callaway,* 7 Ida. 634, 65 Pac. 63; *Willows v. Rosenstein,* 5 Ida. 305, 48 Pac. 1067.)

"Where the plaintiff in his affidavit for an attachment knowingly and grossly overstates the amount of his claim, such

action warrants the inference of malice. (*Tamblyn v. Johnston*, 126 Fed. 267, 62 C. C. A. 601.)

"Exemplary damages are not confined to injuries to the person, but may be awarded in case of injury, seizure or conversion of personal property, where such injury, seizure or conversion is attended with circumstances of aggravation." (13 Cyc. 111; *Casey v. Ballou Banking Co.*, 98 Iowa, 107, 67 N. W. 98; *Briggs v. Milburn*, 40 Mich. 512.)

Punitive damages are recoverable where the injury received results from the defendant's gross negligence or recklessness. (12 Am. & Eng. Ency. of Law, 2d ed., p. 26; 13 Cyc. 105; *P. C. & St. L. Ry. Co. v. Lyon*, 123 Pa. 140, 10 Am. St. 517, 16 Atl. 607, 2 L.-R. A. 489; 5 Ency. Pl. & Pr. 273; *Scott v. Donald*, 165 U. S. 58, 17 Sup. Ct. 265, 41 L. ed. 632.)

"Or where the defendant acts wilfully or with such gross negligence as to indicate a wanton disregard for the rights of others." (*Consolidated Coal Co. v. Haenni*, 146 Ill. 614, 35 N. E. 162; *Lake Shore & M. S. Ry. Co. v. Prentice*, 147 U. S. 101, 37 L. ed. 97; *Eddy v. Syracuse R. T. Ry. Co.*, 63 N. Y. Supp. 645, 50 App. Div. 109; *Larzelere v. Kirchgessner*, 73 Mich. 276, 41 N. W. 488; *L. N. & G. S. Ry. v. Guinan*, 79 Tenn. 98, 47 Am. Rep. 279; *Claiborne v. Chesapeake & Ohio Ry. Co.*, 46 W. Va. 363, 33 S. E. 262.)

"Where the seller wrongfully retains the goods, he is liable to the buyer for the highest market price between the date for delivery and the time for the actual sale." (*Hamer v. Hathaway*, 33 Cal. 117; *Learock v. Paxson*, 208 Pa. 602, 57 Atl. 1097; *Willows v. Rosenstein, supra.*)

Libert's possession was wrongful, and being wrongful he cannot claim expenses. (*Kellogg v. Malick*, 125 Wis. 239, 103 N. W. 1116, 4 Ann. Cas. 893.)

The sale, being unfair, was void, and the defendant was bound to account for the value of the property. (*Boyd v. Beaudin*, 54 Wis. 193, 11 N. W. 521; *Vreeland v. Waddell*, 93 Wis. 107, 67 N. W. 51; *Pettibone v. Perkins*, 6 Wis. 616.)

The sale being void, there was no valid foreclosure, and the acts of the defendant amounted to a conversion of the property to his own use, and rendered him liable for its value

at the time he converted it. (*Gauche v. Milbrath,* 94 Wis. 674, 69 N. W. 999; *Tenney v. Bank,* 20 Wis. 152; *Hartman v. Ringgenberg,* 119 Ind. 72, 21 N. E. 464; *Mussey v. Cahoon,* 34 Me. 74; *Sackrider v. McDonald,* 10 Johns. (N. Y.) 253; *Van Brunt v. Schenck,* 13 Johns. (N. Y.) 414; *Jarratt v. Gwathmey,* 5 Blackf. (Ind.) 237.)

Libert was not a mortgagee in possession for purposes of sale and hence cannot claim any expenses whether reasonable or not. (*Howery v. Hoover, supra; Kellogg v. Mallick, supra.*)

"The appeal is ineffectual for any purpose unless within five days after service of the notice of appeal an undertaking be filed, etc." (*Hattabaugh v. Vollmer,* 5 Ida. 23, 46 Pac. 831; *McCrea v. McGrew,* 9 Ind. 382, 75 Pac. 67.)

"Unless good cause is shown for the delay an appeal from an order denying a new trial taken more than a year after the entry of judgment will be dismissed on motion." (*McCoy v. Oldham,* 1 Ida. 465; *Cronin v. Bear Creek G. M. Co.,* 2 Ida. 1146, 3 Ida. 438, 32 Pac. 53; *Schiller v. Small,* 4 Ida. 422, 40 Pac. 53; *Robson v. Colson,* 9 Ida. 215, 72 Pac. 951; *Smith v. American Falls Co.,* 15 Ida. 89, 95 Pac. 1059.)

STEWART, C. J.—On October 23, 1905, the respondents, Fred Unfried and Sylvia Unfried, borrowed from the appellant, William A. Libert, the sum of $5,000, and executed therefor three certain promissory notes, all dated on the said 23d of October, 1905, as follows: $1,000 due June 15, 1906, drawing interest at 12%; one note for $2,000, due June 15, 1907, drawing interest at 12%; and one note for $2,000, due June 15, 1908, drawing interest at 12%; and to secure said notes the respondents executed to the appellant a chattel mortgage upon personal property located in Garfield county, state of Washington. The property in the mortgage was described as follows: "1200 head of ewe sheep and the increase thereof; 300 head of two year old wether sheep; the said sheep having been purchased from Hamilton Gill. All of such sheep are in possession of the parties of the first part at Alpowai, Washington, and will be ranged on the Alpowai Creek in

winter, and in the Blue Mountains in summer. . All of said sheep to be branded ⬚."

The chattel mortgage contained the following provisions:

"Provided, nevertheless, and these presents are upon the express condition, that if the said parties of the first part, their executors, administrators or assigns, shall well and truly pay unto the said party of the second part, his executors, administrators or assigns, the sum of $5,000, according to the conditions of three certain promissory notes of which the following are true copies . . . . as by said promissory notes, reference being thereunto had, may fully appear, then these presents shall be void. But in case default be made in the payment of said principal sum of money or any part thereof, or interest, or any instalment thereof, as provided in said note, or in case said first party does not take proper care of said property or attempts to sell or dispose of the same, or remove the same or any part thereof from said county, then and from thenceforth it shall be optional with the party of the second part, his executors, administrators or assigns to consider the whole of said principal and interest expressed in said notes as immediately due and payable, although the time expressed in said notes for the payment thereof shall not have arrived; and immediately thereupon and without notice of such election to consider the whole sum to be due, and it shall be lawful for, and the said parties of the first part do hereby authorize and empower the said party of the second part, his executors, administrators or assigns, with the aid and assistance of any person or persons, to enter the premises or such other place or places as the said goods or chattels are or may be placed, and to take or carry away the said goods and chattels and dispose of the same for the best price they can obtain by due process of law, or by arrangement of the said parties to this mortgage . . . . if this mortgage be foreclosed by decree of court, or if it be foreclosed by notice and sale, then counsel fees in the sum of a reasonable amount of dollars. . . . . And until default be made in the payment of this sum of money, the said parties of the first part, their executors, administrators and assigns, may remain and con-

tinue in the quiet and peaceable enjoyment of the said goods and chattels, and in full and free use and enjoyment of the same.''

A mortgage was also executed by the respondents to the appellant as additional security, upon certain real estate in Garfield county, Washington. As a part of said loan the respondent, Fred Unfried, also executed an additional promissory note dated October 25, 1905, for $1,000, due March 15, 1906, with interest from maturity at 12% per annum. This latter note, however, was not included within the chattel mortgage.

On April 17, 1906, the appellant commenced an action in the superior court of Garfield county, Washington, for the foreclosure of the chattel mortgage given him as herein described, and as part of his cause of action set forth the following provisions of said chattel mortgage: ''In case said first party does not take proper care of said property, or attempts to sell or dispose of the same, or removes the same or any part thereof from said county, then and from thenceforth, it shall be optional with the said party of the second part, his executors, administrators or assigns, to consider the whole of said principal and interest expressed in said notes as immediately due and payable, although the time expressed in said notes for the payment thereof shall not have arrived, and immediately thereupon, and without notice of such election, to consider the whole sum to be due, and it shall be lawful for, and the said parties of the first part do hereby authorize and empower the said party of the second part, his executors, administrators or assigns, with the aid or assistance of any person or persons to enter the premises or such other place or places as the said goods or chattels are or may be placed, and take or carry away the said goods and chattels, and dispose of the same for the best price they can obtain,'' etc.

It is also alleged: ''That the said parties of the first part since the date of the execution of the said mortgage, without the wish or consent of the party of the second part, and without his previous knowledge, have sold and disposed of a

portion of the said sheep, to wit: About two hundred and sixty head of the sheep described as two year old wether sheep."

Plaintiff further alleges: "That under the terms and conditions of the said chattel mortgage aforesaid, the plaintiff herein does hereby elect to consider the whole of the sums owing and paying to him from the defendants herein, as evidenced by said promissory notes together with the interest thereon, to be immediately due and payable."

After said action had been commenced the appellant filed an affidavit in said action setting forth the provisions of the mortgage, and alleging in said affidavit: "That if the said mortgaged property is allowed to remain longer in the possession of these defendants, the same will be wholly lost and destroyed and plaintiff will be cheated and wronged out of his property. That as provided for in said mortgage and by law under the facts as herein stated, plaintiff has elected and does elect to consider the whole of the amounts as provided for in said promissory notes, together with the interest, to be immediately due and payable."

Upon this affidavit the superior court of Garfield county appointed one T. W. Owsley to take charge of the possession of the property described in the mortgage, and in said order enjoined the defendants from selling or disposing of any or all of said sheep or their increase, and enjoining the defendants and their employees from interfering with or molesting said sheep or their increase. Thereafter a motion was made by the defendants in said court to dissolve and vacate the order appointing a receiver and to dissolve and vacate the restraining order, and upon hearing the court ordered that the motion be sustained and the restraining order and the order appointing a receiver were dissolved, vacated and set aside for want of jurisdiction and proper notice, and the court found that the defendants had sold a portion of the mortgaged property described in the complaint, and that plaintiff had reason to believe that they would sell more of said property, and therefore ordered that the defendants, during the pendency of the action, be restrained and enjoined

from selling and disposing of any or all of said property or their increase, or from removing the same from the state of Washington; and that plaintiff enter into a bond in the sum of $500, and in case the bond was not filed, such order should be vacated and of no effect.

On August 29, 1906, the superior court of Garfield county entered a decree in the foreclosure proceedings above referred to in effect as follows: That the plaintiff, William A. Libert, recover from Fred Unfried and Sylvia Unfried in the sum of $3,094.20 with interest, and decreed that the property described in the plaintiff's mortgage as follows: 1,200 head of ewe sheep and the increase thereof; and three hundred head of two year old wether sheep, the said sheep having been purchased from Hamilton Gill, be sold by the sheriff of Garfield county, Washington, in accordance with the law, and in accordance with the custom and practice of this court; that the proceeds of the sale be applied toward the payment of the costs of such sale and the amount specified as due from the defendants to the plaintiff; and that if the proceeds of the sale of said property be insufficient to pay said judgment and costs of sale, that the plaintiff have judgment for the deficiency. An appeal was taken to the supreme court from this judgment and it was affirmed. An appeal was also taken to the supreme court from the order of the superior court of Garfield county in discharging the receiver appointed to take charge of the mortgaged property pending foreclosure, and the supreme court dismissed the appeal. On October 5, 1907, an execution was issued upon the judgment rendered in the superior court of Garfield county, and the sheriff of Asotin county in said state made return as follows: "And on the same day served the same by levying on all the right, title and interest of Fred Unfried and Sylvia Unfried, his wife, named in said execution in and to 677 sheep the same being in said Asotin county, state of Washington . . . . and sold said sheep for the sum of $2,369.50, which was the whole price paid therefor." Thereafter the sheriff amended his return and made it show that the sale was for 577 head of sheep and

that the costs of sale were $5.35 instead of $535.00 as stated in the original return.

It further appears that on April 10, 1906, the respondents executed a mortgage upon a certain band of sheep composed of 1,200 ewes and about 500 lambs, the sheep and lambs being branded on the back, and said sheep and lambs ranging on the range in both Garfield and Asotin counties, state of Washington, the lambs being the increase of said sheep since said mortgage was made, and also 28½ sacks of wool branded on both ends of each sack, for the sum of $692.15, to one Fred J. Elsensohn, and that Elsensohn brought an action to foreclose said mortgage, and upon the 13th day of June, 1906, in such action judgment was rendered by default against the respondents herein in favor of Fred J. Elsensohn for the sum of $731.41 with interest, $75 attorney's fees and costs taxed at $22.00, and for a decree foreclosing said mortgage, and directed that the mortgaged property be sold to pay said debt.

An order of sale was issued upon the foregoing decree and the sheriff levied upon and sold 28½ sacks of wool for the sum of $575, and due return was made thereof, and on July 3, 1906, in order to protect himself by reason of his interest in the property mortgaged to him by the respondent, as against the interest acquired under the mortgage of Elsensohn, the latter assigned his said judgment to the appellant, and was paid therefor by the appellant the sum of $828.41. This action was thereafter commenced for the sum of $21,000 damages.

The complaint is based upon four separate causes of action. The first is for damages in the sum of $5,000 alleged to have been sustained by the plaintiff by reason of the unlawful seizure of the property described in the chattel mortgage and the value of the wool clip for the year 1906. The second cause of action asks for damages for the sum of $1,000, claimed to have been sustained by reason of the expenses incurred by the plaintiffs in contesting the appointment of the receiver and in the appeal from the order of the superior court to the supreme court. The third cause of action asks for damages in the sum of $10,000, claimed to have been sus-

tained by the plaintiffs by reason of the negligent manner in which the appellant kept the sheep while in his possession, and the disposal of the wool crop for the year 1907 in the sum of $2,660 and for the value of the wool crop disposed of in the year 1908 in the sum of $2,240. For a fourth cause of action plaintiffs claim damages for the sum of $5,000 claimed to have been sustained by them because of the malicious and wilful and wrongful taking of the sheep and the care thereof and the detention and loss in the neglect of said sheep, and the sale of the wool clips for the years 1907 and 1908 and the increase of said sheep. Issue was joined and the cause was tried to a jury.

A verdict was rendered in favor of the plaintiffs for the sum of $9,173.75. A motion for a new trial was made and overruled, and this appeal is from the judgment and from the order overruling the motion for a new trial. The respondent moves to dismiss the appeal because not taken in time. This motion is overruled; the record shows that the appeal was taken within the provisions of the statute and the rules of this court.

The first error argued by counsel for appellant upon this appeal is that the trial court erred in not sustaining appellant's motion requiring the plaintiffs to elect which remedy they would pursue under the allegations of their complaint alleging conversion and redemption from the mortgage and between conversion and accounting.

The complaint in this case is somewhat peculiar; the allegations showing wrongful acts are intermingled with allegations showing actual injury. For instance, in the first cause of action the plaintiffs allege the malicious and wrongful taking of the sheep and the plaintiffs' damage therefrom and damage in the loss of the wool crop for the year 1906 as the same cause of action; and in the third cause of action the plaintiffs allege damages in the loss of the wool crop for the years 1907 and 1908, and damages generally for the negligent manner in which the appellant kept the sheep so in his possession; while in the fourth cause of action the plaintiffs allege damages for

malicious, wilful and wrongful taking of the sheep and also damages for the wool crop for the years 1907 and 1908.

The several causes of action alleged in the complaint, however, all grow out of the same transaction, that is, the foreclosure of the chattel mortgage in question, and therefore may be united in the same complaint under the provisions of sec. 4169, and the allegations showing separate items of damage in each separate cause of action also grow out of the same state of facts, and the fact that more than one item of damage is alleged in each separate cause of action does not violate any of the provisions of the statute or render such allegations improperly joined. The court did not err in overruling the motion.

In the briefs of counsel there seems to be a wide difference of opinion as to the theory of the trial court upon which the case was tried, but we think the instructions of the court clearly state the issues and the damages sought to be recovered. The trial court struck out certain allegations in the complaint with reference to the promissory note of $1,000 alleged in the complaint to have been exacted and demanded by the appellant from the respondents after the execution of the notes and mortgage given upon the sheep involved in this action, and notwithstanding the fact that such allegations had been stricken from the complaint, the court permitted counsel for respondents to make reference thereto in his opening statement to the jury, and also to introduce evidence showing the findings of the Washington court with reference to such note. The appellant assigned as error the ruling of the trial court in permitting such statement and in admitting such evidence. We are satisfied from an examination of the record that it was serious error for the court to permit counsel for respondents in his opening statement to the jury to state that in addition to the notes aggregating $5,000 to secure which the chattel mortgage was given, appellant took from the respondents an additional $1,000 note, and by reason thereof the whole transaction was usurious, and follows such statement up by introducing in evidence the record of the proceedings in the superior court of Garfield county, in which the court found

that the $1,000 note was usurious, and by reason of that fact certain deductions of interest were made upon the principal notes and certain penalties enforced. This statement of counsel and this evidence no doubt was a forceful influence which leu the jury to assess the large judgment which they rendered by their verdict in this case. The fact that the court had previously stricken this allegation from the complaint certainly left it no part of the case, and the vice in permitting the statement and in admitting such evidence clearly appears in the verdict. The verdict of the jury must have been influenced largely by some feeling of prejudice such as would arise from such statement and evidence; the evidence certainly does not warrant such verdict.

The evidence is very voluminous and we shall not undertake to review it as a whole. It is clear that the appellant took possession of the sheep mortgaged and in controversy, through one T. W. Owsley without right or authority, and that the plaintiff retained the possession of such sheep until they were levied upon by the sheriff under an execution issued upon the judgment rendered by the superior court of Garfield county in the proceedings brought to foreclose the mortgage referred to in this proceeding. The sheep taken were never returned to the plaintiffs.

The court in his instructions to the jury clearly indicated the court's views of the issues made by the pleadings, and the right of the plaintiffs to recover in the action, and in these instructions the court told the jury that the plaintiffs could not recover for the value of the wool crop for the year 1906, for the reason that the wool crop for the year 1906 had been mortgaged to another person and such mortgage had been foreclosed and the wool was sold under said foreclosure sale. The court further instructed the jury that the plaintiffs were entitled to recover the value of the crop of wool for the year 1907 and that the mortgage of the appellant did not cover such wool crop. The court also instructed the jury that the plaintiffs could not recover for the wool crop for the year 1908, for the reason that the sheep sheared for that year were sold under the decree of foreclosure awarded to the appel-

lant, and that he became the owner thereof prior to the shearing season for that year. The court also instructed the jury that the appellant Libert was required to use reasonable and ordinary care of the sheep pending the foreclosure proceedings and while they were in his possession, and for any sheep which died or became lost through the want of his care, he was liable for the value thereof for the dead or lost between the time he took possession and the time of the sale upon foreclosure; that the care required of the appellant was such reasonable and ordinary care as an ordinarily prudent and cautious person would exercise under the same conditions and if such care was so exercised, then the appellant, defendant, would not be liable, but if such care was not exercised, and damages were sustained by reason of such want of care, the number of sheep lost or which died because of such want of care was the basis for estimating such damages; and in determining the loss sustained, the jury should not consider lambs which might have been born, but only such as were in existence when the sheep were taken, and that there were only two matters which the jury should take into consideration in determining the plaintiffs' claim for actual damages: First, the value of the wool crop converted in 1907; second, the damage sustained by death or loss of sheep while the sheep were in the appellant's possession and prior to the foreclosure sale. The court further advised the jury that the appellant was entitled to certain credits for the deficiency judgment still unpaid in his favor in the foreclosure suit brought by him and also for the deficiency in the judgment obtained by Elsensohn and assigned to appellant, and that such sums should be deducted from the actual damage sustained by respondents. The court further instructed the jury that they might allow punitive damages in addition to the actual damages arising from the malicious taking of said sheep, and if such taking was for the malicious purpose of oppressing and harassing the plaintiff and not for the purpose of, in good faith, endeavoring to collect his indebtedness and protect his own interests, then the jury should allow such damages as to them seemed proper.

The court also instructed the jury that the plaintiffs should not be allowed punitive damages unless the evidence showed that the appellant had no probable cause for taking possession of said sheep, and that the appellant took possession and converted the wool and permitted the sheep to die and become lost while in his possession for the malicious purpose of oppressing and harassing the plaintiffs, and not for the purpose of in good faith endeavoring to collect the indebtedness and protecting his own interest. The court also called the attention of the jury to the fact that evidence had been introduced with reference to the past history of the transaction between the parties, and that such evidence was admitted for the purpose of giving to the jury all the light possible in determining the allegations of malice, and whether damages should be administered as punishment in addition to the actual damages sustained, but that such evidence was not to be considered as a guide for the amount of punitive damages; that the amount of punitive damages was purely and solely a question to be determined by the jury, provided they find the allegations of malice proven by the evidence. This latter instruction was no doubt intended to guide the jury in considering the statements made by counsel for the plaintiff and the evidence in relation to the usury embraced in the original transaction when the loan of $5,000 was made by the appellant to the respondents and the mortgage in controversy was given. We are convinced, however, that this instruction is not couched in such language as to overcome the influence and vice of the statements made, and the evidence offered, in influencing the jury in fixing the amount of punitive damages, because in this case there is absolutely no evidence which in any way shows any malice or hatred or design to prosecute the action for the foreclosure of the chattel mortgage, other than for the sole and only purpose of collecting the debt secured thereby, and protecting the property covered by said mortgage. It is apparent that the action originally in the superior court of Garfield county and the appeals that were taken to the supreme court were all prosecuted in good faith and for the sole purpose of enforcing the legal rights of the

appellant and the protection of the property which was covered by the mortgage as security for the indebtedness due him. The mere fact that he made a mistake in asking the court originally to appoint a receiver to take charge of the mortgaged property pending the foreclosure proceeding, and that the court appointed a receiver without proper showing having been made to give the court jurisdiction to do so, does not deny him the right under the terms of the mortgage, whenever he was satisfied that the mortgaged property was not being properly cared for or that the mortgagor was selling or disposing of the mortgaged property, to declare the mortgage indebtedness due and proceed to collect the same. And in all the legal proceedings in the courts of Washington he was proceeding strictly in accordance with the provisions of the contract of mortgage and pursuing his legal rights; although the court in some of the steps taken by him held against him, yet in the end his mortgage was foreclosed in accordance with the terms of the contract, and he recovered judgment for the amount due upon the mortgage debt according to the findings of the trial court, and from a full and fair examination of all the evidence we are satisfied that the evidence does not support the allowance in this case of any punitive damages.

The other instructions of the trial court as to damages state rules of law correctly as applied to the facts. While we express no opinion as to the correctness of the rule announced in the instruction with reference to the wool crop of 1906, whether the mortgage included such crop of wool, yet we are inclined in this case to approve the instruction in so far as the plaintiffs' rights in this particular case are concerned, for the reason that the mortgage covered property located in the state of Washington and the terms of such mortgage were construed by the supreme court of that state, in which it was held that a mortgage upon sheep and their increase did not include the wool sheared from such sheep. (*Libert v. Unfried,* 47 Wash. 186, 91 Pac. 776.)

The evidence of damages sustained by the plaintiffs by reason of the taking of the sheep and the loss sustained by

reason of the loss of the sheep so taken is very much in conflict, but we are inclined to give the respondents herein the full benefit of the proof and allow the highest estimate the jury could form from the evidence. The mortgage specifies that it covers 1200 head of ewe sheep and the increase thereof and 300 head of two year old wether sheep. This makes 1500 head of sheep as described in the mortgage. The evidence we think fully established that the appellant, through Owsley, took possession of all the property mortgaged, which included the 1,500 head mentioned in the mortgage, and 528 lambs, and also 120 other sheep not described in the mortgage. Whether the lambs were the increase of the sheep mortgaged does not appear from the evidence, but inasmuch as the mortgage was given on the 25th day of October, 1905, and the seizure was made about the 19th day of April, 1906, we will assume that the lambs taken were the increase of the mortgaged sheep. The appellant therefore seized and took possession of at least 1,620 sheep and 528 lambs. Of the sheep thus seized 577 were sold on the 19th day of October, 1907, upon execution issued upon the judgment of foreclosure of the chattel mortgage in controversy, for the sum of $2,369.50. This left 1,043 head of sheep and 528 lambs still in the possession of the appellant, for which he has never made any account to the respondents. The amount, however, realized from the sale of 577 head of sheep, to wit, $2,369.50, was credited upon the judgment of foreclosure, less the expenses of sale, which amounted to $5.35. The judgment of $3,094.20 drew interest at 6% from its date, August 1, 1906, to the date of sale on the 19th day of October, 1907, which amounted to $206.28, which together with the principal made the amount due upon the judgment at that time $3,300.48, and deducting therefrom the amount realized from the sale left a balance due of $936.33, and this is one of the deficiency judgments which the trial court in his instructions directed the jury to consider in making up the verdict. In this connection we may as well refer also to the judgment of Fred J. Elsensohn heretofore referred to and its assignment to the appellant and the sale of the wool under the execution issued upon said

judgment and the deficiency arising after the sale, as follows: Date of judgment, June 13, 1906; amount of judgment, $731.41; interest, $112.75; attorney's fees, $75.00, costs, $22.00, total, $941.16; amount realized from sale of the wool, $575.00, leaving a deficiency of $366.16. The interest upon the $936.33, the deficiency upon the foreclosure judgment from the date of sale to the date of trial at 6% amounts to $138.08, making the sum of $1,074.42, and the interest upon the Elsensohn deficiency judgment from the date of sale made under the judgment to the date of the trial at 10% amounts to $84.08, which added to the principal makes $450.24, and the two added makes a total of $1,524.65, the total amount of these two deficiencies which appellant was entitled to have considered and allowed by the jury as against any amount they might determine due the plaintiff for damages for the taking of the property involved; and under the proof in the case at the time the verdict was rendered the respondents were indebted to the appellant in said sum of $1,524.65.

Returning now to the sheep taken; as seen, the appellant has given account for 577 head of sheep taken and the same has been properly credited upon the indebtedness due from the respondents to the appellant. The remainder of the sheep, to wit, 1,043 head and 528 lambs, which were never returned to the respondents, are unaccounted for. When the appellant seized the property taken he became responsible for the value thereof to the respondents, and it was his duty to care for the same and return such property or account for its conversion, and the evidence in this case shows that the market value at the time the sheep were taken was $3.50 a head and for the lambs $1 a head. The total value of the sheep taken and unaccounted for, therefore, was $3,650.50 and for the lambs $528, making a grand total of $4,178.50.

It is impossible from the evidence in this case to tell just what became of the 1,043 head of sheep and the 528 lambs unaccounted for by the appellant. There is evidence in the record showing that the winter during which they were detained was a very hard winter, and that there was excessive

loss by reason of the severity of the season. There is other evidence in the case showing the consumption of a large number of the sheep by the employees and the straying away of some, but whatever may have been the cause of the disappearance of these sheep, the appellant is responsible for their value; he took them at his own risk and it was his duty to return the property taken or its value, and it can make no difference in this case what he may have expended in caring for such sheep or how they happened to disappear; he is responsible to the respondents for the value of the property taken.

The evidence also shows that for the year 1907 appellant clipped from the sheep then in his possession 5,993 pounds of wool and sold the same at 16 cents a pound upon which he paid a commission of 5%, making the total amount received upon the sale of such wool $910.94. This wool was sheared from 698 sheep, 577 head of which did not at that time belong to the appellant, but were in his possession and were the property of the respondents, and the wool sheared from such sheep is chargeable under the instructions of the court against the appellant and was recoverable in this action, and as the wool sheared from 698 sheep brought $910.94, the value of the wool sheared from 577 sheep would be $753.02. This amount also draws interest from the date of sale to date of judgment and amounts to $185.11, and added to the amount received for the wool makes the sum of $938.13. The value of the sheep taken, to wit, $4,178.50, also draws interest from the date of taking, amounting to $1,653.98, making in the aggregate the sum of $6,770.61. Deducting therefrom the amount due the appellant from the deficiency judgments leaves a balance of $5,245.96 due respondents, for which sum the evidence authorized the jury to find a verdict, and which in our judgment the evidence fully supports.

It is also argued that the appellant should be charged for the value of some bucks taken and supplies and camping outfit and dogs, etc., but an examination of the transcript fails to disclose the value of any such property, even if it were taken, and for that reason it could not be figured as an item of damages.

The court instructed the jury that they should take into consideration and deduct from the damages proven the amount realized by the appellant from the sheep taken and sold under execution issued upon the foreclosure judgment and the amount of a certain deficiency judgment held by the plaintiff against the respondents assigned to the plaintiff and recovered by one Elsensohn. These are the deficiencies which we have considered and which no doubt the jury allowed in arriving at their verdict. We believe that the figures we have above given can be the only true data upon which the jury could have acted in this case and correctly show the actual damages sustained by the respondents. This makes no allowance for any punitive or exemplary damages. It is true that at the beginning when the sheep were first taken the appellant took possession of the same wrongfully; yet the courts of Washington held that appellant was proceeding to foreclose a chattel mortgage and thereafter rendered a decree in his favor, and the mere fact that in entering the decree of foreclosure the court found that he had exacted usury from the respondents at the time the mortgage and the notes were given, and for that reason entered a decree and allowed reductions in the amount actually due upon the notes given, as a punishment, and the fact that the appellant may have made statements to the effect that he intended to break the respondents up and the fact that he did not give to the sheep the common ordinary care which should have been given them, were not sufficient of themselves to show that his actions were malicious and wanton or outrageous, or showed such a state of facts as would justify the jury in implying the existence of malice or oppression in the things he did do. As we understand the rule of exemplary or punitive damages, they cannot be recovered unless the evidence shows clearly that the action of the wrongdoer is wanton, malicious or gross and outrageous, or where the facts are such as to imply malice and oppression, in which case the law authorizes the court to allow a sum of money as punishment to the wrongdoer for the injury done. In this case, however, we do not believe that the facts show the existence of malice or oppression. (Sutherland on

Damages, vol. 2, pp. 1084, 1095; *Lyles v. Perrin,* 119 Cal. 264, 51 Pac. 332; *Mabb v. Stewart,* 133 Cal. 556, 65 Pac. 1085.) In 13 Cyc., p. 111, the rule is stated as follows: "As a general rule they [speaking of exemplary damages] will only be allowed where such injury is attended by circumstances of wilful fraud, malice or gross negligence."

We think the general rule recognized by the weight of authority is, that exemplary or plenary damages may be allowed where the injury complained of is attended by acts of the wrongdoer which show wilful malice, fraud or gross negligence. The evidence, however, must show the malice and negligence, or facts from which the same may be inferred. In this case we are satisfied there is no evidence whatever showing any wilful malice or any fraud or gross negligence on the part of the appellant, in foreclosing his mortgage and pursuing the mortgaged property. The instruction given by the trial court in relation to exemplary damages should not have been given and the court was in error in so instructing the jury. But where, as in this case, the facts show that the appellant wrongfully took possession of the mortgaged property and retained the same and converted such property to his own use or permitted it to be lost or injured or destroyed, he is responsible to the owner for the market value of such property at the time the same was taken.

We conclude in this case that the judgment is excessive and that it should be reduced to $5,430.93, and we direct that in case the respondents will satisfy and remit the judgment to that sum the judgment will be affirmed for the amount of $5,430.93; that such satisfaction shall be entered of record in the office of the clerk of the district court within thirty days from the time the *remittitur* is filed in that court, and in case it is not so entered and filed a new trial is hereby ordered and directed. The costs of this appeal are divided equally between the parties.

Ailshie and Sullivan, JJ., concur.

### ON PETITION FOR REHEARING.

(January 5, 1912.)

(Syllabus by the reporter.)

1. In an action to recover damages for the conversion of personal property, where the case was submitted to the jury on an erroneous instruction that they could allow punitive and exemplary damages, and a verdict was returned for plaintiff on that theory, rendering it impossible to be determined how much of the verdict was made up of punitive damages and how much of actual damages, a new trial will be ordered, with a view to arriving at a correct estimate under the evidence of the actual damages only.

AILSHIE, J.—In this case the appellant has filed a petition for a rehearing in which he claims that the court in the original opinion allowed an excessive amount against him and that some of the items constituting the amount awarded are unauthorized by the evidence. Among other things, he claims that he has been overcharged in the sum of $1,582 for sheep taken; that he should have been allowed for the costs and expense of keeping and caring for the sheep that were returned; and that he should have also been allowed for such loss of sheep as was not occasioned by the negligence or wrongful act of appellant. He also complains of the allowance of interest at the rate at which it was figured by the court; and, lastly and chief of all, the contention made by appellant is that he should be granted a *new trial*, for the reason that the case was submitted to the jury on an instruction that they could allow punitive and exemplary damages and that the verdict was returned on that theory, rendering it now impossible for this court or anyone else to determine how much of the verdict was made up of punitive damages and how much of actual damages.

There is undoubtedly merit in this last contention. There can be no doubt, however, of the power and authority of this court under sec. 3818, Rev. Codes, to "modify any order or judgment appealed from." It is nevertheless apparent in this case that after we determined that the respondent was

Jan. 1912.]        UNFRIED v. LIBERT.            731

Opinion of the Court—Ailshie, J., on Petition for Rehearing.

not entitled to recover punitive or exemplary damages, we were under the necessity of ascertaining from the record and computing ourselves the amount of actual damage sustained by the respondents. In doing so, we had to determine a standard of values and a class of proofs which we would follow in arriving at the amount to be allowed, and so we said: ''The evidence of damages sustained by the plaintiffs by reason of taking the sheep and the loss sustained by reason of the loss of the sheep so taken is very much in conflict, but we are inclined to give the respondents therein the full benefit of the proof and allow the highest estimate the jury could form from the evidence''; and accordingly made our computation upon the basis of the most favorable evidence to the respondents. In the light of the contentions made by appellant in his petition for rehearing and of the further fact that respondents have also filed a ''petition for reconsideration of amount allowed respondents,'' and therein call our attention to certain errors and inaccuracies in the computation of the amount to be allowed, we have concluded that it would best serve the ends of justice to order a new trial in this case, and so we have decided to vacate the order and judgment of the court, in so far as it directs that judgment be entered for a specified amount in favor of the respondents, and on the contrary, order and direct that a new trial be had upon the theory of the law and in harmony with the views expressed in the original opinion herein.

The respective counsel in their petitions admit that there is and has been throughout a confusion of figures as to the number of sheep taken and the number accounted for and the number that should in justice be charged to the appellant. Counsel for respondent admits that the court has charged appellant with 141 head of old sheep that had been accounted for. On the other hand, respondents contend that they should have been given a credit for the 1906 wool clip and that by making these two corrections respondents would still be entitled to a larger judgment than that ordered by the original opinion in this case.

The more we consider the record in this case and the various and divergent views expressed by counsel in their briefs and petitions for rehearing, the more we are convinced that the evidence ought to be submitted to a jury where all the proofs may be gone into fully with a view to arriving at a correct estimate of the actual damages, free from all notion of inflicting any punitive or exemplary penalty on the appellant.

The court's instruction to the jury with reference to the wool clip of 1906 was correct and would preclude any recovery by respondents from appellant for the wool grown for that year.

The legal rate of interest in the state of Washington may also be ascertained and allowed on the value of the property converted, and likewise as to the Elsensohn and Libert deficiency judgments from the date of entry until paid. The value of the 1907 wool clip from the sheep returned and subjected to the foreclosure sale will be ascertained in the manner indicated in the original opinion herein.

The judgment is reversed and a new trial is hereby ordered. Costs of this appeal will be divided equally between the parties.

Stewart, C. J., and Sullivan, J., concur.