202 P.2d 236

HARRINGTON v. HADDEN.

No. 7417.

Supreme Court of Idaho.

Jan. 18, 1949.

Verner R. Clements, of Lewiston, for appellant.

Felton & Jones, of Lewiston, for respondent.

24

. HOLDEN, Chief Justice.

This is an action to recover general damages for personal injuries growing out of mutual combat between plaintiff and defendant, for exemplary damages, damages for loss of business and damages for the loss of earnings. The cause was tried November 24, 1947, by the court sitting with a jury. November 26, 1947, eleven jurors brought in a verdict for plaintiff Harrington for the sum of $12,500 and on the same day judgment was entered thereon for that amount, from which defendant Hadden appeals.

Numerous errors are assigned; however, only those deemed material and essential to a decision of the appeal will be discussed. Those deemed essential are:

1. May exemplary damages be recovered?

In Klam v. Koppel, 63 Idaho 171, 180, 118 P.2d 729, 733.

"We held in Unfried v. Libert, 20 Idaho 708, 728, 729, 119 P. 885, 891 (followed and approved in Gunnell v. Largilliere Company, Bankers, 46 Idaho 551, 559, 269 P. 412):

" 'As we understand the rule of exemplary or punitive damages, they cannot be recovered unless the evidence shows clearly that the action of the wrongdoer is wanton, malicious, or gross and outrageous, or

where the facts are such as to imply malice and oppression, in which case the law authorizes the court to allow a sum of money as punishment to the wrongdoer for the injury done.' And continuing:

" 'We think the general rule recognized by the weight of authority is that exemplary or plenary damages may be allowed where the injury complained of is attended by acts of the wrongdoer which show willful malice, fraud, or gross negligence. The evidence, however, must show the malice and negligence, *or facts from which the same may be inferred.'* " (Emphasis in the opinion.)

Continuing the court said:

"It is contended 'the complaint fails to state facts sufficient to disclose malice, oppression, wantonness, etc., warranting punitive damages.' In Dwyer v. Libert, 30 Idaho 576, 586, 167 P. 651, 653, Ann.Cas. 1918B, 973, we quoted with approval the following from Stark v. Epler, 59 Or. 262, 117 P. 276:

" 'The rules of pleading do not require that the allegations relating to exemplary damages should be set out separately from the other averments of the complaint. Special damages must be grounded upon separate allegations, but exemplary damages are so intimately connected with general damages that, if the general allegations are sufficient to show the wrong complained of was inflicted with malice or oppression, or other like circumstances, the complaint will be sufficient to authorize the infliction of punitive or exemplary damages.' We then held:

" 'It is not necessary to the recovery of exemplary damages that they should be specially claimed in the complaint, but such damages may be recovered under a claim for damages generally.' "

█ 2. May a physician be examined concerning injuries sustained by his patient, where the patient himself testifies and calls other physicians to testify to his injuries?

Section 16-203, I.C.A., provides:

[Sec. 16-203] "Confidential relations and communications.—There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person can not be examined as a witness in the following cases:

"1. * * *

"2. * * *

"3. * * *

"4. A physician or surgeon can not, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

"5. * * *"

This court construed subdivision 4, supra, in Jones v. City of Caldwell, 20 Idaho 5, 15, 116 P. 110, 114, 48 L.R.A.,N.S., 119, where the same contentions, in substance, were made as are made in the case at bar.

This court in reviewing such contentions, said:

"The next assignment of error involves the question as to whether the plaintiff, by calling Dr. Miller, her regular physician, waived the privilege of objecting to the testimony of Dr. Stewart given her by subdivision 4 of section 5958, Rev.Codes [now sec. 16-203, I.C.A.], which is as follows:

" 'There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases: * * *

" '4. A physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.' "

After reviewing the cases cited in support of the above quoted assignment of error, this court held:

"We conclude that the decided weight of authority is in favor of the view that a waiver of the privilege as to one physician does not waive the privilege as to any other physician. It is also very clear that our statute forbids and prohibits the examination of a physician without the consent of the patient, and this privilege extends to the *individual witness,* and not to the *consultation* or *transaction* in which he was a physician. In other words, each individual physician is a witness within the meaning of this statute, rather than a number of physicians who may be present or participate in a consultation, being treated as one witness, as appears to be done by Prof. Wigmore. As we view it, the plaintiff did not waive the privilege so far as Dr. Stewart is concerned, by calling Dr. Miller to testify for her, and, if the provisions of said section 5958 [Sec. 16-203, I.C.A.] resulted in the suppression of truth, that is a matter for legislative consideration. Counsel for defendant contends that Dr. Stewart was called to testify as an expert, and that his evidence should have been given to the jury for that reason. By calling a physician as an expert, the provisions of said section 5958 cannot be evaded and the witness permitted to base his opinions on information acquired while attending the patient. If that were permitted, the provisions of said statute would be without force or effect.

"We therefore conclude that the plaintiff did not waive the privilege so far as Dr. Stewart is concerned by calling Dr. Miller as a witness. The judgment must therefore be *reversed* and a new trial granted, and it is so ordered." (Emphasis in the opinion.)

On the second appeal of Jones v. City of Caldwell, supra, this court adhered to its holding on the first appeal. Jones v. City of Caldwell, 23 Idaho 467, 130 P. 995; Cretney v. Woodmen Accident Co., 196 Wis. 29, 219 N.W. 448, 62 A.L.R. 675, 680.

■ 3. Did the trial court err by instructing the jury: "* * * you are en-

titled to find in favor of plaintiff for such sum or sums that were shown he may have suffered from the loss of his dry-cleaning business, not exceeding the sum of $7,500.-00"?

The record discloses respondent's dry-cleaning plant was completely destroyed by fire June 7, 1947, fifteen days after the mutual combat between respondent and appellant occurred in appellant's basement saloon. The fire destroyed both the cleaning plant and respondent's business. Respondent, of course, would have sustained the loss of his business even if he had not sustained any injuries as a result of the combat. To recover damages for loss of his business it would be necessary for respondent to establish a causal connection between his loss of business and the tort upon which this action is bottomed. Hence, the court erred by instructing the jury respondent could recover damages for the loss of his dry-cleaning business. DeLashmitt v. Journal Pub. Co., 166 Or. 650, 114 P.2d 1018, 1020, 135 A.L.R. 1175.

■ 4. Is the evidence too indefinite, uncertain and speculative to support a recovery for anticipated earnings or profits?

Respondent testified:

"Q. All right, the question is how much were you grossing for the four or five months preceding this altercation? A. About two thousand dollars a month.

"Q. And how much would that net you? A. It gave us a net profit of about five hundred dollars a month.

"Q. Was that approximately what you had been earning? A. Yes.

"Q. And that approximates what you believe you would earn?"

It is at once apparent respondent was merely estimating or guessing as to what the dry-cleaning plant grossed and netted. Such guesses or estimates are too indefinite, uncertain and speculative.

In Schwartz v. Eitel, 7 Cir., 132 F.2d 760, 763, the court, in passing on testimony of that nature, said: "Plaintiff was in the business of raising and selling nursery stock, building cottages for sale, and buying and selling real estate. He testified that because of his inability to look after his business, he suffered a financial loss, and over objection [as in the case at bar], he was permitted to state that he estimated his lost earnings were $2500. Such a basis for assessment of damages was too indefinite, uncertain and speculative. The objection to the question should have been sustained and the evidence excluded."

■ Moreover, damages for loss of anticipated earnings or profits must be shown with reasonable certainty. Boise Street Car Co. v. Van Avery, 61 Idaho 502, 512, 525, 103 P.2d 1107.

We are not holding anticipated earnings or profits can not be recovered. What we are holding is that the evidence in the record in this case is too indefinite, uncertain and speculative to permit a recovery.

■ We have not considered certain questions urged by respondent as he did not

prosecute a cross-appeal, nor have we discussed certain matters about which appellant complains, and perhaps with some justification, to-wit, striking the allegation of exemplary damages from the complaint, and then presenting this issue to the jury by instruction, after the argument, because they are very unlikely to recur. However, there are some matters meriting discussion and consideration (inasmuch as the judgment must be reversed and a new trial granted); for instance, the trial court instructed the jury on the claims of the respective parties as shown by the pleadings, stating the exact amount respondent sought to recover as general damages, the exact amount he sought to recover as special damages, as well as the exact amount respondent sought to recover as anticipated earnings. After so instructing the jury, the court then proceeded to instruct the jury on the law applicable to each item of damages so claimed by respondent, and in doing so, charged the jury the verdict should not exceed stated sums, respectively. It would be better practice, we think, to limit the jury to the amount established by the evidence. Whitney v. Woodmansee, 15 Idaho 735, 740, 99 P. 968. Another matter is this: The form of verdict submitted to the jury by the court was general. It did not provide, for instance, for a finding of the amount allowed for exemplary damages, if any, or for general damages, if any. And as to that, we think it better practice in a case of this nature to submit a form of verdict providing for a separate finding, for illustration, on the amount to be found, if any, for exemplary damages and the amount to be allowed, if any, for general damages. Lathrope et al. v. Flood, 135 Cal. 458, 67 P. 683, 57 L.R.A. 215..

It follows from what has been said the judgment must be reversed, and it is so ordered, with directions to grant a new trial. Costs awarded to appellant.

GIVENS, J., and FEATHERSTONE, TAYLOR and SUTPHEN, District Judges, concur.