No. 44,860

ARTHUR B. BREWER and MARGARET P. BREWER, *Appellees,* v. HOME-STAKE PRODUCTION COMPANY, *Appellant.*

(434 P. 2d 828)

Opinion filed December 9, 1967.

*Franklin D. Gaines,* of Augusta, argued the cause and was on the briefs for the appellant.

*Fred R. Vieux* of Augusta, and *James B. McKay, Jr.,* of El Dorado, argued the cause, and *J. B. McKay,* of El Dorado, was with them on the briefs for the appellees.

The opinion of the court was delivered by

KAUL, J.: The appellees, plaintiffs below, brought this action against appellant for actual and punitive damages resulting from the alleged negligence of appellant in the operation and development of an oil and gas lease adjoining the land of appellees. The appellees will hereafter be referred to as plaintiffs or Brewers and the appellant as defendant or Home-Stake.

The petition alleges Home-Stake was engaged in a water flood project in the leases in question and had lead lines for moving oil from oil wells on the leases to the tank batteries used in connection therewith and pipe lines for moving salt water as a part of the project, and that all of such leasehold equipment was old, dilapidated and in bad condition. The petition further alleges that the general drainage and ravines from both Home-Stake oil and gas leases ran toward and over Brewers' land.

On or about December 2, 1964, and subsequent thereto, oil, salt water and other deleterious substances escaped from the leases into

the ravines and ran onto Brewers' land. Brewers' cattle drank from the ravines containing such oil, salt water and other deleterious substances. As a result four cows and four calves died and the remainder of plaintiffs' herd suffered injuries. Plaintiffs were required to move their cattle to another pasture and to supplement the feed to their herd as a result of defendant's operations.

On or about December 3, 1964, Home-Stake burned off the crude oil which had escaped from its leases and accumulated in one of the ravines. Home-Stake's workmen allowed the fire to get out of control, thereby destroying 20 trees on plaintiffs' real estate. Plaintiffs prayed judgment for $7,000 actual and $10,000 punitive damages.

In its answer defendant admits ownership of the oil and gas leases but specifically denies any negligence in the operation thereof or that it was using old or dilapidated equipment and further denies that it destroyed trees on plaintiffs' property or that plaintiffs' cattle drank any polluted matter which had escaped from defendant's property.

Issues were joined and the case was tried to a jury. A verdict was returned in favor of plaintiffs for $2,542 actual damages and $5,000 punitive damages. Defendant's motion for a new trial was overruled and this appeal was duly perfected.

Issues raised on appeal concern that part of the trial court's instruction on punitive damages in which the items to be considered by the jury were set out. Home-Stake makes two contentions in this connection. It is first claimed the trial court erroneously specified factors to be considered in assessing punitive damages, if such were allowed, and, secondly, that a member of the jury was guilty of misconduct in connection with the consideration of the instruction on punitive damages.

We first pause to note that plaintiffs' challenge of defendant's right to be heard in this appeal is found to be without merit.

We shall proceed therefore to the issues raised. Defendant does not argue that exemplary damages were improperly awarded under the facts as determined by the jury; its complaint is directed solely at the instruction given. Defendant's objection to the trial court's instruction on punitive damages is directed at the following portion thereof:

". . . If you allow punitive damages in this case then in assessing such damage you may take into consideration the following items:

"1. The probable and reasonable expense of the litigation including attorney's fees, expert witness fees and the inconvenience and time involved in preparing for trial.

"2. Such amount as will deter defendant from such future conduct; and

"3. An amount as shall be an example to others and deter them from such conduct.

"The amount should not be so small as to be trifling nor so large as to be unjust, but such as candid and dispassionate minds can approve as a punitive example and as a warning to others against a similar lapse of duty."

It is defendant's contention that attorney's fees for services rendered in the same case should never be allowed unless stipulated for or expressly authorized by statute and that item (1) quoted above violates this principle.

We agree with defendant's statement of the law. We do not agree with the application thereof to the instruction given in this case. It is true this court adheres to the rule that attorney's fees for services in the case on trial are not to be allowed or taxed as costs in the absence of express statutory authorization.

In *Swartzell et al v. Rogers,* 3 Kan. (2d Ed.) *380, a partition suit, this court first declared the word "costs" includes charges necessarily incurred in the prosecution of an action, but does not include attorney's fees. Soon thereafter, by statute (now appearing as K. S. A. 60-1003[c][5]), provision was made for the allowance of attorney's fees in partition actions. Since this early announcement, in the absence of express statutory authorization, attorney's fees have never been allowed as a part of compensatory damages nor in addition to a judgment for either actual or exemplary damages. Kansas cases on the subject were reviewed and discussed in *State, ex rel. v. Sage Stores Co.,* 158 Kan. 146, 145 P. 2d 830. See, also, *Walker v. Davis Van & Storage Co.,* 198 Kan. 452, 424 P. 2d 473; *McGuire v. McGuire,* 190 Kan. 524, 376 P. 2d 908; *Ablah v. Eyman,* 188 Kan. 665, 365 P. 2d 181; *Vonachen v. Pratt Glass Co.,* 172 Kan. 545, 241 P. 2d 775.

The instruction in question in the instant case, however, does not suggest the allowance of attorney's fees in addition to exemplary damages nor does it direct the fixing of a certain amount of attorney's fees as an item in the computation thereof. We believe a fair analysis of the instruction as a whole merely suggests that the jury may consider attorney fees as a necessary part of the probable and reasonable expenses of litigation in estimating exemplary dam-

ages in such sum as will deter defendant and others from such wrongful conduct in the future.

There is a difference of opinion among jurisdictions which have ruled on the question whether counsel fees and other expenses of litigation may be considered in estimating the amount in cases where exemplary or punitive damages may be given. (22 Am. Jur. 2d, Damages, § 167, p. 237.) What appears to be the rule in many jurisdictions is stated in Oleck on Damages to Persons and Property § 289 as follows:

"In many (but not all) jurisdictions, when the case is one in which punitive damages may be awarded, the jury may include litigation expenses in the amount of damages. This, however, really grants such expenses as punishment of the loser, not as proximate expenses of the winner; which is part of the punitive amount, not in addition to it." (pp. 600, 601.)

The rule is similarly stated in 25 C. J. S., Damages, § 50:

"Where the facts are such that an award of exemplary damages may be made, the probable counsel fees may be considered by the jury in estimating the amount of the damages; but under this rule attorney fees are not allowed as compensation but rather as puishment for defendant's wrongful and malicious act. They are not allowed in addition to the sum assessed as exemplary damages, and their recovery is never permitted in a separate action. . . ." (p. 786.)

See, also, 1 Sedgwick on Damages (9th Ed.) § 234, pp. 468, 469.

The rule followed in Kansas is in substance as stated above. It was first considered and applied in *Titus v. Corkins,* 21 Kan. (2d Ed.) *722, where the trial court, in connection with punitive damages, instructed that the jury might take into consideration the probable and reasonable expenses of conducting the suit. In discussing the meaning of punitive damages the court stated:

"While they imply punishment, and their assessment is largely a matter of discretion with the jury, yet a court is not bound to turn the matter over to them arbitrarily, and without any suggestions as to matters which they ought to consider in their assessment of such damages. It may and, indeed, ought to call their attention to any matters which will tend to prevent any mere arbitrary and thoughtless award, and to make the assessment fair and reasonable, considering all of the circumstances of the case. Among such matters are those suggested in the instructions complained of. They are not stated to the jury as matters which must be made the basis of compensation, but are suggested as proper for their consideration; and, as influencing the amount of smart-money, they are eminently proper. Indeed, much might be said in favor of including within actual damages and mere compensation, not only the taxable costs, but also all the expenses of the litigation. Counsel say that there was no testimony as to the expenses, and therefore the court improperly referred to

the matter. If these expenses were the basis of compensation, then testimony as to them would be necessary, and the plaintiff could recover only what he should prove he has incurred. But it is otherwise in reference to smart-money. The jury are aware that a suit is prosecuted; they know that time, labor, and money are consumed in such a suit, and, from what they see, have some idea of the amount of such time, labor, and money. And, though they may not know exactly such amount, it is right for them to consider the matters of such time, labor, and money in fixing the amount of smart-money. . . ." (p. *724.)

In *Duff v. Read*, 74 Kan. 730, 88 Pac. 263, error was urged in admitting evidence of the value of the attorney's services. In the opinion it was stated:

". . . If punitive damages were allowable at all, the jury could consider the expenses of the action without any evidence. (*Titus v. Corkins*, 21 Kan. 722.) Surely, then, evidence as to any necessary expense in prosecuting the action is admissible." (p. 735.)

In *Evans v. Insurance Co.*, 87 Kan. 641, 125 Pac. 86, a judgment purporting to be for the recovery of attorney's fees in the absence of an award of punitive damages was set aside. In discussing the meaning of exemplary damages it was stated:

". . . In this state exemplary damages are not regarded as compensatory in any degree, but are awarded solely as punishment. (*Machinery Co. v. Smith*, ante, p. 331, ____Pac.____.) The amount of damages that should be allowed as punishment in a given case can not be determined by any fixed rule. The fact that the offender's misconduct has caused the injured party to incur the expense of litigation—an expense for which (except as to items taxable as costs) he can not claim compensation—is merely one of the matters that may be considered in fixing it. . . ." (pp. 646, 647.)

Even though exemplary damages are not regarded as compensatory in any degree in this state it is nevertheless clearly established that the probable expenses of litigation, including attorney's fees may be considered by the jury either with (*Duff v. Read*, supra.) or without evidence (*Titus v. Corkins*, supra.) in arriving at such an amount of damages as will deter a party from such future wrongful conduct. When such matters are submitted to a jury under an instruction, as given here, they are not factors which must be made a basis for compensation but are suggested for consideration in arriving at a proper amount of punitive or exemplary damages.

For its second point on appeal defendant claims the verdict was vitiated by the misconduct of a jurywoman. Defendant devotes very little of its brief in support of this contention.

At the hearing on the motion for a new trial defendant called two

jurors as witnesses. One, Mrs. Bartlett, testified that several years prior to the trial she had been employed as a legal secretary and also had personal experience as a litigant. She mentioned these matters to a jury. Pertinent portions of her testimony are as follows:

"Q. Mrs. Bartlett, in arriving at these attorneys' fees as instructed by the Court the jury did consider and consider only what you had to say about the amount of attorneys' fees, isn't that correct?

"A. I don't know. Since no one else had any idea and no one else had been involved in a suit, I just mentioned it because I was personally involved.

"Q. In arriving at punitive damages, the issue of reasonable attorneys' fees was a prime consideration in the deliberations, was it not?

"A. I don't think it was. I think we were concerned with the punitive damage amount just as an overall amount where we considered attorneys fees was more or less the total amount, as I remember it.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Of this five thousand dollars, how much of this amount was attributed to attorney fees?

"A. I don't know. We didn't arrive at any amount for attorneys fees.

"Q. How was your personal experience as you related it to the jury considered in your best judgment?

"A. You mean in regard to the award we made on this?

"Q. Yes.

"A. Well, as I understand when we arrived on a total sum we more or less figured on what would be on attorneys' fees."

The testimony of juror Hughes is narrated as follows:

"Such discussion did not affect him in his decision.

"The jury did not discuss a specific amount of attorneys' fees in arriving at punitive damages.

"The jury spent at least an hour in arriving at punitive damages.

"None of the jurors based their decision in whole or in part on the statements made by Marjorie Bartlett concerning attorneys' fees.

"Mrs. Bartlett's statements concerning attorneys' fees were not discussed by the jury.

"The reason for the award of $5,000.00 punitive damages was to punish the defendant for its conduct."

The trial court heard the testimony of the two jurors and overruled the motion for a new trial.

While it appears that even though attorney's fees were mentioned by Mrs. Bartlett and some discussion was had such was not a basis for the award of punitive damages. Both jurors testified that no specific amount for attorney's fees was arrived at or included as such in the verdict.

This court has repeatedly held that before a new trial will be

granted for a jury's misconduct substantial rights must have been prejudiced. Some of the more recent cases in which the rule was applied are *Baker v. Western Casualty & Surety Co.*, 196 Kan. 345, 411 P. 2d 711; *Barajas v. Sonders*, 193 Kan. 273, 392 P. 2d 849; *Thomas, Administrator v. Kansas Power & Light Co.*, 185 Kan. 6, 340 P. 2d 379.

The conflicting testimony submitted here is clearly insufficient to establish a basis for a conclusion that substantial rights have been prejudiced.

A careful examination of the record discloses no trial errors warranting the granting of a new trial. The judgment is affirmed.