19185

Floyd A. GILBERT, Respondent, v. DUKE POWER COMPANY, Appellant

(179 S. E. (2d) 720)

*Steve C. Griffith, Jr., Esq., Hanyesworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellant,*

C. Ben Bowen, Esq., *Abrams, Bowen and Townes,* of Greenville, *for Respondent,*

March 8, 1971.

Moss, Chief Justice:

Floyd A. Gilbert, the respondent herein, instituted this action against Duke Power Company, the appellant herein, to recover actual and punitive damages. The respondent alleged that the appellant, a public utility corporation which had been furnishing him electric current at his home at 7 Elf Lane, in the City of Greenville, on or about March 28, 1969, without just cause or excuse, did unlawfully, willfully and

wantonly discontinue the service; and that as a result thereof he was deprived of the use of his home, and the food which he had stored in his refrigerator and freezer was destroyed.

The appellant, while admitting that it had furnished the respondent with electric current for his home as claimed, alleged that it had discontinued such service on April 9, 1969, pursuant to due and proper notice, because of the respondent's failure to pay the monthly bill for service due on March 27, 1969.

This case came on for trial in the Greenville County Court on January 22, 1970, before The Honorable James H. Price, Jr., County Judge, and a jury, and resulted in a verdict in favor of the respondent for actual and punitive damages.

It is necessary that a short résumé of the testimony be given in order to properly pass upon the questions raised by the appellant. It is admitted that the respondent lived at 7 Elf Lane in the City of Greenville and that on and prior to March 12, 1969, the appellant had been supplying electricity to his home; that the respondent received a bill from the appellant dated March 12, 1969, showing a total due for electricity supplied of $53.30, or, if paid after March 27, 1969, of $54.60. The respondent testified that he gave his mother a sufficient amount of cash to pay the electric bill. The mother testified that she went to the office of the appellant and attempted to pay the bill as rendered but the appellant refused to accept the money so tendered and demanded an additional sum of $31.38, which it claimed that the respondent owed for electricity furnished to "Floyd Gilbert", a resident of 106 Hardy Street, because a check issued by a tenant of Floyd L. Gilbert in payment of the tenant's service bill was returned due to insufficient funds. The mother also testified that she explained to the appellant that her son had not ever lived at 106 Hardy Street and that he was not the same "Floyd Gilbert", and hence did not owe the $31.38 demanded.

The mother further testified that the unpaid check in the amount of $31.38 was one given by James A. Ellenburg, 106 Hardy Street. She said that a lady clerk gave her a slip of paper showing the aforesaid name and the amount of the check. Upon receipt of the information concerning the check she said that she wanted this information so that she could explain to her son why the appellant refused to accept the payment of the electric bill as rendered. She testified that after she left the office of the appellant, on March 27, 1969, she went by the home of her son and the power was already cut off.

The respondent testified that he was a truck driver and was absent from his home at the time his electricity was cut off. He said that when he returned to Greenville on or about April 5, 1969, he went to his home and the power was cut off, and the food in his deep freeze and refrigerator was spoiled. The respondent testified that he was not acquainted with James A. Ellenburg, who lived at 106 Hardy Street, and was a tenant of Floyd L. Gilbert. He, of course, testified that he was not responsible for any bill for electricity furnished to Floyd L. Gilbert or his tenant.

The appellant offered its records and the testimony of several of its employees that the respondent's electric service was discontinued on April 8, 1969, following due and proper notice, because of the respondent's failure to pay the electric bill finally due on March 27, 1969. None of the witnesses for the appellant recalled having any conversation with the mother of the respondent concerning the payment of the respondent's bill or the Ellenburg check.

During the course of the trial appellant's attorney attempted to cross examine the respondent with regard to seven other occasions when his power had been terminated due to the nonpayment of his electric bill. Upon objection by the respondent, the trial judge refused to allow this line of cross examination and excluded any evidence of the previous payment record of the respondent.

We have held that a consumer of electricity, furnished by a public service company, has the right to the continuance of the service, pending the adjustment of a *bona fide* dispute as to the amount due on his bill for service. We have also held that the public service company has the right to discontinue its service to the customer upon the nonpayment by the customer of recent and just bills for the service furnished him, and has, also, the right to refuse a further supply of electricity until those bills are paid. *Arnold v. Carolina Power & Light Company,* 168 S. C. 163, 167 S. E. 234.

The appellant does not question the sufficiency of the evidence to warrant a finding of actual and punitive damages but does assert that the trial judge was in error in refusing to permit the cross examination of the respondent concerning the record of termination of electrical service on other occasions, other than the one in issue, asserting that such was relevant in mitigation of punitive damages.

We have held that punitive damages are generally regarded not only as punishment for the wrong but also as vindication of a private right and a plaintiff is entitled to punitive damages when, under proper allegation in an action of *tort,* he proves the wanton, willful or malicious violation of his rights. *Davenport v. Woodside Cotton Mills Co.,* 225 S. C. 52, 80 S. E. (2d) 740. We have no formula for the measurement of punitive damages and the amount to be awarded is peculiarly within the judgment and discretion of the jury, subject to the supervisory power of the trial judge over jury verdicts. *Hicks v. Herring,* 246 S. C. 429, 144 S. E. (2d) 151.

The appellant contends that evidence of previous terminations of electrical service to the respondent had a direct bearing on the conduct and motive of the appellant in terminating the service on the occasion in question. The appellant says that it would be more inclined to terminate a customer's electrical service for nonpayment

of a current bill when such customer had had previous terminations of service because of the failure to pay therefor. The appellant also submits that the proffered evidence might well have had a bearing on the jury's determination as to its motive in terminating his service and whether it acted willfully, wantonly and recklessly on the occasion in question. It further submits that such evidence should have been received to show that punitive damages should not be allowed or, if allowed, that they should be more restricted than if it had acted without provocation and in the absence of mitigating circumstances.

In 22 Am. Jur. (2d), Damages, Sec. 331, at pages 433, 434, it is said:

"When the recovery of exemplary damages is sought and the pleadings properly disclose circumstances which justify an allowance of such damages, any matters of evidence having a reasonable tendency to establish the existence or nonexistence of a fact or circumstance warranting the allowance of such damages may be introduced. Thus, evidence of any fact which legitimately tends to show the motive and intent of the defendant in doing the act complained of is admissible —as, for example, the existence or absence of malice or other aggravations essential to the allowance of such damages. * * *"

\* \* \*

"Since exemplary damages are given in most jurisdictions by way of punishment to an evildoer, all circumstances tending to prove that the defendant was without evil design, or though such design is admitted, to mitigate its existence, are admissible in evidence, either to show that punitive damages should not be allowed, or if allowed, that they should be more restricted than if he had acted without provocation and in the absence of mitigating circumstances. Hence, for the purpose of showing that none but compensatory damages should be allowed, evidence is admissible to prove that the wrong complained of was the result of accident, that it was committed unintentionally, or through an honest mistake,

or that the defendant acted in good faith and in the honest belief that he was justified in doing it. Evidence of circumstances tending to show provocation is also admissible provided such circumstances occurred sufficiently close to the time of the commission of the wrongful act that they may reasonably be said to have provoked it."

The respondent contends that the appellant made no effort to offer any testimony that it took into consideration the previous terminations of service when it discontinued service on the occasion here involved. Based upon the previous ruling of the trial judge, the appellant could not offer evidence that it took into consideration the previous nonpayment record of the respondent in discontinuing the service on the occasion here involved.

We think that the proffered testimony was relevant on the question of willfulness and could be properly considered in the assessment of punitive damages. In *Westbrook v. Jefferies,* 173 S. C. 178, 175 S. E. 433, the plaintiff alleged that the defendant's agents were operating two wagons side by side on the highway without lights, resulting in a collision with the plaintiff's automobile. The plaintiff sought to introduce evidence that the defendant had frequently driven his wagon at night without lights. This court held that although the proffered testimony was not admissible as to the proximate cause of plaintiff's injury, it was relevant and admissible on the issue of willfulness and punitive damages. Of tangent interest is the case of *Gwynn v. Citizens' Telephone Co.,* 69 S. C. 434, 48 S. E. 460. It appears that an action was brought against the defendant for punitive damages for failure to put in a telephone. The trial judge permitted evidence that the defendant's switchboard and lines were so full that it could not put on the additional wire, and that others were refused for the same reason. This court held that the testimony was competent in mitigation of damages but not as a justification for the refusal to put in the telephone.

It is our conclusion, under the factual showing here made, that the trial judge was in error in refusing to permit the appellant to show the previous terminations of electrical service as such was proper for the consideration of the jury in their assessment of punitive damages.

In view of the conclusion that we have reached, we deem it unnecessary to consider the other question posed by the appellant.

The judgment of the lower court is reversed and this case remanded thereto for a new trial.

Reversed and remanded.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.