496 P.2d 682

**Clinton COX and Roger D. Cox, Plaintiffs-Respondents,**

**v.**

**Lloyd STOLWORTHY, Defendant-Appellant.**

**No. 10906.**

Supreme Court of Idaho.

April 27, 1972.

Arthur L. Smith of Albaugh, Bloem, Smith & Pike, Idaho Falls, for defendant-appellant.

Willis B. Benjamin, of St. Clair, St. Clair, Hiller & Benjamin, Idaho Falls, for plaintiffs-respondents.

McFADDEN, Justice.

Plaintiffs-respondents Clinton Cox and Roger D. Cox, father and son, instituted this action against defendant-appellant Lloyd Stolworthy, seeking compensatory and punitive damages for trespass upon premises held by the Coxes under a lease from the State of Idaho. In their complaint the plaintiffs alleged wilful and malicious trespass by the defendant in bulldozing about half a mile of road through the premises and in destruction of a fence; they also alleged wilful and malicious trespass by the defendant or his agents in running sheep over the plaintiffs' property. By his answer defendant admitted the trespass incidents, except for destruction of the fence, but denied any malicious conduct. The factual issues framed by the pleadings were submitted to a jury on special interrogatories. The jury found for the plaintiffs, assessing compensatory damages of $1,500 for forage destroyed by the sheep trespassing, $100 for forage destroyed by bulldozing the road, $75 for costs of repairing a fence damaged by the bulldozing, plus $5,000 as punitive damages solely for the bulldozing incident. After judgment was entered in conformity with the special verdict, defendant moved to amend the judgment notwithstanding the special findings by the jury. This motion was denied by the court.

The defendant appealed from the judgment based on the special findings by the jury and from the order denying his motion to amend. The defendant's contentions are directed to the award of the punitive damages. He assigns as error the giving of an instruction by the district court on punitive damages and submitting interrogatories on punitive damages to the jury. He asserts that the record fails to show such conduct by the defendant as would entitle the jury to consider any issue of punitive damages. The defendant also assigns as error the refusal of the court to either amend the judgment by striking the punitive damages, or in the alternative, failure of the court to reduce the punitive damages.

This appeal presents two principal issues:

1. Whether the record is sufficient to establish such a deliberate, malicious or reckless course of conduct by the defendant as to justify the court in submitting the issue of punitive damages to the jury; and

2. Whether the record is sufficient to sustain the award of punitive damages.

The punitive damages allowed by the jury were for either the destruction of the fence by the bulldozer or for the destruction of forage by the bulldozing of the roadway, or both. Subsequent to the filing of this action and before trial the State Land Department granted a right-of-way to the defendant for the construction of this road. The state lease to the plaintiffs provided that the Board of Land Commissioners reserved the right to grant easements and rights-of-way across the premises as it deemed necessary in the public interest, with the grantee of the easement obligated to pay to the lessee the reasonable value of growing and immature crops within the boundaries of the right-of-way or easement. Thus, the defendant subsequently obtained the right to do what he did—

construct a roadway over the premises in question.

The record discloses that the defendant had had some disagreements with the plaintiffs. Defendant, some years before, constructed a road across a portion of the state premises now leased to the plaintiffs. In May, 1969, the defendant directed his employee to bulldoze a continuation of the then existing road northerly to connect it with another road outside plaintiffs' premises. The employee did construct approximately a half mile of road across this property without consent of the plaintiffs or the State. Although the defendant knew that authorization from the State was required before the opening of this road, he never obtained it. As a defense the defendant claimed he had obtained oral permission from the state land agent. The testimony of the land agent was to the contrary and the jury obviously rejected the defendant's version.

During the construction of this road a portion of a fence between the properties of the parties was destroyed. Although obviously aware the fence was down, neither the defendant nor his employee attempted to repair it nor notify the plaintiffs of the damage.

■ This record reflects such a conscious disregard by the defendant of the known property rights of the plaintiff as to bring this case within the ambit of the cases previously decided by this Court which justify submitting to the jury for resolution the issue of whether punitive damages should be awarded. Unfried v. Libert, 20 Idaho 708, 119 P. 885 (1911); Boise Dodge, Inc., v. Clark, 92 Idaho 902, 453 P.2d 551 (1969); Lewiston Pistol Club, Inc., v. Imthurn, 94 Idaho 264, 486 P.2d 275 (1971). *See also* Fisher v. Carlin, 219 Or. 159, 346 P.2d 641 (1959). Under the facts before the district court, there was no error in submitting to the jury the instruction on punitive damages.[1]

A more difficult problem is presented by this appeal in the attack by the defendant on the amount of the punitive damages which were awarded. To comprehend fully the nature of this problem, it is essential to review the decisions of this Court wherein awards of punitive or exemplary damages have been considered.

The first case where this Court considered punitive or exemplary damages was Unfried v. Libert, 20 Idaho 708, 119 P. 885 (1911), an action for conversion of livestock, wherein this Court accepted the general rule that

"exemplary or plenary damages may be allowed where the injury complained of is attended by acts of the wrongdoer which show willful malice, fraud, or gross negligence * * * or facts from which the same may be inferred." 20 Idaho at 729, 119 P. at 891.

The rule stated in Unfried v. Libert, *supra,* was followed by this Court in Gunnell v. Largilliere Co., 46 Idaho 551, 269 P. 412 (1928), reversing an award for punitive damages because the record failed to establish facts showing the acts of the defendant were "wanton, malicious or gross and outrageous."

Three other cases have turned on the question whether the record established the necessary conduct to warrant an exemplary damage award. In each case the exemplary damage award was disapproved. Verheyen v. Dewey, 27 Idaho 1, 146 P. 1116 (1915), concerned alleged joint trespassers to real property. The Court ruled that "there was no legal evidence whatever of any malice, insult or deliberate oppression" and that for a co-defendant to be liable for malicious acts of the other he must be implicated in such malice. In Zollinger v. Big Lost River Irrig. Dist., 83 Idaho 411, 364 P.2d 176 (1961), a case somewhat similar to Verheyen v. Dewey, this Court held the record failed to show wilful malice, fraud or gross negligence

---

1. The defendant does not take issue as to the correctness of the language of the instruction given on punitive damages, but only challenges the giving of any instruction on this issue.

and struck the award of punitive damages. Likewise, in Morrison v. Quality Produce, Inc., 92 Idaho 448, 444 P.2d 409 (1968), a $16,000 punitive damage award in a replevin action was reversed and vacated, this Court holding the evidence did "not show, expressly or impliedly, that [appellant] acted maliciously, fraudulently or with gross negligence. At most it can be said only that the parties were antipathetic." The Court further ruled that the jury may have been prejudicially influenced by being allowed to pass on the issue of punitive damages and therefore a new trial was ordered as to the amount owed as compensatory damages.

Summerfield v. Pringle, 65 Idaho 300, 144 P.2d 214 (1943); Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953); Driesbach v. Lynch, 74 Idaho 225, 259 P.2d 1039 (1953); and White v. Doney, 82 Idaho 217, 351 P.2d 380 (1960), represent the cases where punitive damages had been allowed in the trial court, and on appeal the award of punitive damages had been reduced by this Court.

In Summerfield v. Pringle, *supra,* an action for alienation of affections, the jury awarded $35,000 compensatory and $15,000 exemplary damages with judgment entered thereon. The award was reduced by the Court to $20,000 compensatory and $1,000 exemplary damages. This Court held that where passion and prejudice influence the size of the verdict a court could reduce it, but where passion and prejudice contributed to the return of any verdict a new trial should be granted.[2] One of the two dissenting justices strongly criticized that part of the majority opinion which held that exemplary damages could be measured by the wealth of a defendant.[3]

Williams v. Bone, *supra,* was an action in conversion of a neon sign, wherein the plaintiff sought compensatory damages for loss to his taxicab business and punitive damages. Judgment was entered on the jury verdict for $200 as the value of the sign taken, $500 for loss to the business and $750 punitive damages. This Court struck the damages for loss of business as not proved, let stand the $200 for the sign, and reduced the punitive damages to $500. Therein this Court stated to the effect that punitive damages were not favored in the law, and that exemplary damages must bear some relation to the injury complained of "and the cause thereof."

Driesbach v. Lynch, *supra,* was an action for trespass to realty (littoral rights and dock facilities). Judgment was entered below for plaintiff for $3,750 compensatory and $10,000 exemplary damages. On appeal this Court stated that the punitive damages were so excessive "when compared with the actual damages as to indicate that the amount thereof was fixed under the influence of passion and prejudice." The Court affirmed the judgment for the full amount of compensatory damages but only $2,500 punitive damages, conditioned on defendant accepting the reduction to $2,500, otherwise judgment was reversed and a new trial granted.

White v. Doney, *supra,* an action for conversion of a mobile home and damages to personal possessions, restated that punitive damages are not favored by the law and the allowance thereof should be exercised with caution and within the narrowest limits. Following that pronouncement, this Court affirmed an award of $1,802 compensatory damages and reduced an award of $1,400 punitive damages to $900.

A logical assessment of these latter four cases produces the rule, somewhat lacking in constancy, that where the members of this Court believed the amount of exemplary damages awarded seemed too high, this Court would reduce the amount for the reason that "punitive damages are not favored by the law and the allowance there-

---

2. This rule was more particularly detailed in Luther v. First Bank of Troy, 64 Idaho 416, 133 P.2d 717 (1943).

3. Evidence as to defendant's wealth is discussed, *infra.*

of should be exercised with caution and within the narrowest limits."

This Court's latest decision on the subject lends support to the latter analysis. In Lewiston Pistol Club, Inc., v. Imthurn, 94 Idaho 264, 486 P.2d 275 (1971), defendant lessors and another had intentionally interfered with plaintiff lessee's possession of certain land and had also, without cause, destroyed property of the lessee. After trial to the court without a jury actual damages were awarded in the sum of $1,024 as well as $1,000 for exemplary damages. The Court held the record adequately supported the finding that the acts complained of were wilful and malicious. Based on that finding, and after reciting the Idaho rule that punitive damages are not favored and may be awarded only with caution, the $1,000 exemplary damages award was upheld. Approval of that quite modest sum is significant in light of the conservative exemplary damages standard set forth as controlling in the case. It seems to indicate that awards have to meet a stringent test as to the amount permitted and that this particular modest amount was acceptable. The case of Klam v. Koppel, 63 Idaho 171, 118 P.2d 729 (1941), seems to conform as well. The majority of the Court sustained a claim and delivery action award of $250 compensatory damages and $290.50 exemplary damages on the basis there was evidence of malice, oppression and wantonness justifying such an award.

Crystal Dome Oil & Gas Company v. Savic, 51 Idaho 409, 6 P.2d 155 (1931), stands apart in Idaho's law of punitive damages. There this Court sustained a judgment awarding damages for the value of a geological report, plus $1,000. This Court in sustaining the $1,000 award in the face of a contention there was no proof of such damages, considered it could be sustained as an award of punitive damages, even though the record reflects the jury was not instructed on exemplary damages nor were exemplary damages sought by the

prayer of the complaint.[4] Nor can Harrington v. Hadden, 69 Idaho 22, 202 P.2d 236 (1949), be considered as authoritative in the area of punitive damages. There the judgment was reversed and new trial ordered, and, in passing, this Court pointed out that better practice requires a jury to separately pass on the issues of amounts to be awarded for compensatory and punitive damages. In Curtis v. Siebrand Bros. Circus & Carnival Co., 68 Idaho 285, 194 P.2d 281 (1948), this Court merely held that the district court erred in setting aside a default judgment. In remanding the cause the Court reinstated the default judgment for compensatory damages, but eliminated from it, however, an award of $1,000 punitive damages on the grounds that punitive damages had not been pleaded in the complaint and thus the default judgment did not conform to the relief sought.

Three very recent cases before this Court, Village of Peck v. Denison, 92 Idaho 747, 450 P.2d 310 (1969); Boise Dodge, Inc., v. Clark, 92 Idaho 902, 453 P.2d 551 (1969); and Prudential Federal Sav. & Loan Ass'n v. Johnson, 93 Idaho 850, 476 P.2d 786 (1970), involved special factual considerations not normally present in actions between two individuals.

In Village of Peck v. Denison, *supra,* the village instituted the action to enjoin the defendants from interfering with the domestic water supply of the village, and also to recover punitive damages. The injunction was granted plus $6,000 punitive damages was awarded. The opinion indicated defendants by their action were endangering the water supply of some 200 inhabitants of the village. This Court affirmed the judgment. The village was properly seeking to protect its inhabitants from further transgressions by the defendants, and the majority of the Court sanctioned the punitive damages pointing out the especially aggravated activities of the defendants and that the "award of $6,000 punitive damages against appellants serves to punish such actions."

4. This becomes apparent only upon examination of the original record in this Court.

Boise Dodge, Inc., v. Clark, *supra*, involved an aggravated factual situation wherein the company had engaged in a practice of offering to the public for sale as new cars a number of "demonstrator" vehicles on which the odometer had been turned back to show very low mileage to conform to the offering of new vehicles. This Court upheld a judgment awarding $12,500 punitive damages and only $350 compensatory damages, pointing out that an award of punitive damages "serves useful, if limited, functions in the law as a means of punishing conduct which consciously disregards the rights of others and as a means of deterring tortious conduct generally." Under the facts before the Court in Boise Dodge, Inc. v. Clark the weight to be given to the ratio between the amount of actual damages and the amount of exemplary damages was minimized. When one considers the motivating factor for the deception practiced on the purchaser—the additional profit to be obtained by the company—the punitive damages of necessity had to be extensive in order to reduce the profit motive and also to serve as a deterrent for such future activities by that company or any other engaged in a similar practice.

Appellants in Prudential Federal Sav. & Loan Ass'n v. Johnson, *supra*, brought a third party complaint for rescission of a home improvement contract alleging they had been the victims of a fraudulent business scheme. Appellants sought actual damages of $4,500 and punitive damages of $75,000. The district court granted summary judgment against appellants only as to their claim for punitive damages. On appeal, we reversed, holding that there were sufficient allegations of fraud, duly denied by respondents, to raise issues of material fact.

More importantly, the opinion addressed the issue of the measure of the exemplary damages. In their motion for summary judgment respondents contended that "the claim for $75,000.00 punitive damages is not sustained by any proper measure of damages under the laws of the State of Idaho" and pointed to appellants' answer to an interrogatory which asked the method by which the $75,000 punitive damage amount was computed. Their answer was:

> "'*Answer* 2. (b) I figure that this is a modest sum for people who act as they have done in this case—misleading us, making false promises and wild statements to people like ourselves who have limited education, income and experience, and who are trusting enough to believe the things that such salemen say.'"

Appellants had also alleged in their pleadings

> "'[t]hat the installation of such material [outdoor metal siding] would not cost Johnsons any money; that their home would be a "model home"; that for every person to whom these companies or their representatives showed such model home and who later purchased siding, Johnsons would receive $200.00 to pay toward their job[,]'"

but that all these representations were falsely made. 93 Idaho at 852, 476 P.2d at 788.

This Court held that the attack on the measure of punitive damages failed. The decision noted that "[p]unitive damages are by their very nature incapable of definite ascertainment and cannot be governed or measured by any precise standards" citing Boise Dodge, Inc. v. Clark as authority for that rule of law.

In the instant action, however, we are not dealing with a case such as Village of Peck v. Denison, *supra*, where the plaintiff sought protection for all inhabitants of the village, nor such cases as Boise Dodge, Inc. v. Clark and Prudential Fed. Sav. & Loan Ass'n v. Johnson, both *supra*, where calculated deception was practiced for profit on members of the purchasing public. What we have in this case is an action wherein the plaintiffs, who were cattle raisers, sought settlement of a private controversy with the defendant sheep-man. There is nothing in the record to reflect any future intent by the defendant to continue the activities, as was in Village of Peck v. Denison, nor any crass profit making scheme as present in Boise Dodge, Inc. v. Clark. Thus

the necessity for the heavy deterrent and punishment aspect of those two cases is absent here.

There is no attack made in the present appeal on the exemplary damages principle and as previously discussed we uphold the submission to the jury of the exemplary damages issue. Our review of the precedents in this area has revealed conflicting standards, and thus we conclude the objective standards by which courts determine what is a reasonable amount of exemplary damages in a case such as this should be more precisely defined.

In setting about this task, we keep in mind two factors. First, in fashioning useful, workable legal rules a court must clearly define the social purpose or social utility the rules are to serve. Second, the rules ought to fix objective factors which can be logically ordered, legally evaluated, and rationally judged to arrive at a result which is both predictable and consistent in similar situations.

The first factor, the social purpose served by exemplary damage awards, has received attention in most of our prior decisions. As defined in Boise Dodge, Inc. v. Clark, *supra,* and Williams v. Bone, *supra,* the social purpose served by exemplary damages is the deterrence of defendant and others from like conduct. The purpose of punishing the defendant for his behavior has also been mentioned. Unfried v. Libert, *supra.* The majority view as expressed in the cases is that punishment of defendant and making defendant an example as warning to others are the purposes for punitive damage awards. Acheson v. Shafter, 490 P.2d 832 (Ariz.1971); Atkinson v. Herington Cattle Co., 200 Kan. 298, 436 P.2d 816 (1968); Spackman v. Ralph M. Parsons Co., 147 Mont. 500, 414 P.2d 918 (1966); Palombi v. D & C Builders, 22 Utah 2d 279, 452 P.2d 325 (1969); Hayes v. Gill, 216 Tenn. 39, 390 S.W.2d 213 (1965); Giant of Virginia, Inc., v. Pigg, 207 Va. 679, 152 S.E.2d 271 (1967); Spencer v. Steinbrecher, 152 W.Va. 490, 164 S.E.2d 710 (1968); Malco, Inc. v. Midwest Aluminum Sales, Inc., 14 Wis.2d 57, 109 N.W.2d 516 (1961); and Condict v. Hewitt, 369 P.2d 278 (Wyo.1962).

Other authority relegates punishment to a more minor position. This view probably reflects a cautious outlook as to the appropriate function of the civil courts. This authority recognizes deterrence as the main purpose and that there will be occasions when the ordinary compensatory damage award will not be enough to deter wrongdoers. Davis v. Georgia-Pacific Corp., 251 Or. 239, 445 P.2d 481 (1968); Ward v. Taggart, 51 Cal.2d 736, 336 P.2d 534 (1959); Morris, "Punitive Damages in Tort Cases," 44 Harvard L.R. 1173 (1931); Hodel, "The Doctrine of Exemplary Damages in Oregon," 44 Ore.L.R. 175 (1965).

The scope of the present problem as to how a jury objectively implements a deterrence policy is pointed up by reading a portion of the instruction given the jury on exemplary damages in this case.

"Instruction No. 10

"Exemplary or punitive damages may be awarded to plaintiffs against the defendant in such sums as, in your judgment, would be reasonable and proper as a punishment to the defendant, and to deter others not to offend in a like manner.

"Exemplary or punitive damages cannot be awarded unless the evidence shows clearly that the action of the defendant was wilful and malicious, or that the conduct of the defendant was grossly negligent. * * *."

It may be seen then, that the jury is put in the untenable position of having to determine an appropriate deterrence factor (amount to award, if any, as punitive damages) without the benefit of clear guidelines. However, in our search for objective standards relating to deterrence we have not, candidly, found a wealth of sources for guidance. I.R.C.P. 50(b) and I.C.R. § 10–602 are the references to the power given to the court to reduce a verdict found excessive. Summerfield v. Pringle, *supra.* The dissent of Justice Ailshie in the latter case, discounting the Court's logic in re-

ducing the verdict instead of ordering a new trial, points out the difficulty of appellate review of allegedly excessive verdicts. His criticism essentially is that on appeal this Court merely substitutes its own subjective judgment for that of the jury.

A brief survey of the standards used by reviewing courts is illustrative. In many jurisdictions the jury is accorded broad discretion in fixing the amount of exemplary damages subject only to the rule that they not act under passion and prejudice, or that the court may also review the award and change it. Faubion v. Tucker, 58 N.M. 303, 270 P.2d 713 (1954); Brosofske v. Gregory, 463 S.W.2d 48 (Tex.Civ.App.1971); Hannahs v. Noah, 158 N.W.2d 678 (S.D.1968); Gilbert v. Duke Power Co., 179 S.E.2d 720 (S.C.1971); Oller v. Hicks, 441 P.2d 356 (Okl.1967); Klein v. Elliott, 59 Tenn.App. 1, 436 S.W.2d 867 (1968); Scruggs v. Haynes, 252 Cal.App.2d 256, 60 Cal.Rptr. 355 (1967). *See also:* Curtis Pub. Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (Opinion of Harlan, J., concurred in by three other members of the Court, plus separate concurring opinion of Warren, C. J.).

Other courts have announced a more stringent test, that the punitive damage award must either have some reasonable relationship or be reasonably proportionate to the compensatory damage award although none of the cases utilize a set ratio or other standardized test. Dial Finance and Thrift Co. v. Dennis, 403 S.W.2d 847 (Tex.1966); Reynolds v. Willis, 209 A.2d 760 (Del.1965); Montgomery v. Tufford, 165 Colo. 18, 437 P.2d 36 (1968); Claude v. Weaver Const. Co., 158 N.W.2d 139 (Iowa 1968).

Of course, too, we are aware that several jurisdictions only allow awards of punitive damages in narrow situations such as where specifically allowed by statute. Otherwise such awards are disallowed. Alabama Power Co. v. Rembert, 282 Ala. 5, 208 So.2d 205 (1968); City of Lowell v. Massachusetts Bonding and Ins. Co., 313 Mass. 257, 47 N.E.2d 265 (1943); Maki v. Aluminum Bldg. Products, 73 Wash.2d 23, 436 P.2d 186 (1968).

In past decisions this Court has stated that the nature of defendant's acts under the circumstances and the injury inflicted could be factors contributing to the size of the award. Williams v. Bone, *supra*, 74 Idaho at 190, 259 P.2d at 813. At the same page of that opinion there is a caution that

"The jury, or the trier of facts, is not vested with arbitrary discretion in awarding exemplary damages out of all proportion to *the actual damages sustained, and the acts of the wrongdoer.*" (Emphasis added.)

We recognize that this rule of Williams v. Bone is no more helpful than the rules announced by other appellate courts and that improvement is needed, or must at least be attempted herein.

Setting an absolute limit on an award does not satisfy the requirement of providing the trier of the facts with objective criteria which it may use in setting a reasonable award. One guideline was mentioned in Dwyer v. Libert, 30 Idaho 576, 167 P. 651 (1917), a libel action. The Court stated that a jury may consider evidence of the wealth of a defendant in deliberations on exemplary damages. Restatement of Torts § 908(2) is in accord with this view. So are Wetherbee v. United Ins. Co. of Am., 18 Cal.App.3d 266, 95 Cal.Rptr. 678 (1971); Joab, Inc., v. Thrall, 245 So.2d 291 (Fla.App.1971); State ex rel. Hall v. Cook, 400 S.W.2d 39 (Mo.1966); Hicks v. Herring, 246 S.C. 429, 144 S.E.2d 151 (1965); Dalton v. Meister, 22 Wis.2d 173, 188 N.W.2d 494 (1971).

■ We are mindful, however, of the criticism that has been leveled against the use of such evidence of a defendant's wealth. Dissenting opinion of Ailshie, J., in Summerfield v. Pringle, *supra*; Hodel, "Exemplary Damages in Oregon," 44 Ore. L.R. 175, 189–193. These thoughtful warnings may be utilized. Evidence as to a defendant's wealth may only be offered for the limited purpose of determining the efficacy of a money judgment in deterring future tortious conduct. The materiality of such evidence would be questionable, of

course, if the evidence at that point had not reasonably established the malicious and wilful character of defendant's conduct. And we add that the absolute limits of an exemplary damages award depend on criteria other than defendant's wealth.

A pattern of factual situations may be discerned in the past cases decided by this Court which appears to be closely related to the size of the exemplary damage awards allowed on appeal. We believe the pattern is quite significant and can be usefully described for the guidance of the trial courts and will help determine the case at bar. The pattern seems to encompass at least three categories of situations.

■ The first concerns those cases involving deceptive business schemes operated for profit and often victimizing numerous members of the public aside from the plaintiff. Clearly in such cases the award of exemplary damages should aim at making the cost of such repetitive antisocial conduct uneconomical. Thus, for example, in Boise Dodge, Inc., v. Clark, *supra*, cross-complainant was one victim of a fraudulent scheme. A generous award of exemplary damages served to remove the profit factor from the whole scheme. *See,* Comment, "Automobile Dealership Fraud: Punitive Damages," 7 Idaho L.R. 117 (1970). *Cf.* Barth v. B. F. Goodrich Tire Co., 265 Cal.App.2d 228, 71 Cal.Rptr. 306 (1968).

The second category is illustrated by the Village of Peck v. Denison decision, *supra*. There defendants' repeated actions endangered the physical well-being and health of the several hundred citizens of the town. Where actual physical harm is threatened or actually inflicted on a person or persons the situation rises to a serious level of affairs. In such a case where the plaintiff's physical well-being is endangered, a substantial punitive damages award finds justification in the nature of the malicious conduct itself as well as the quality of the injury sustained.

■ The case at bar fits neither of these categories. However, a third category of cases does seem applicable. These cases typically involve non-violent but nevertheless serious disputes between two parties. Often the dispute centers on an interest in real or personal property or an interference with a business operation. Here the action concerned an act of trespass to the plaintiffs' real property but no lives were endangered and there was no indication the defendant made a practice of acting in this fashion.

In such situations in the past this Court has not looked favorably on large punitive damage awards for the apparent reason that the nature of the dispute did not warrant a severe penalty to the wrongdoer—an award out of proportion both to the activity complained of and the damages incurred.

Although the situation does not seem to warrant a large punitive damage award, the quality of the defendant's actions is hardly commendable as is evidenced by the jury's decision in awarding $5,000 as punitive damages. Furthermore, the plaintiffs have been harmed by conduct which is so characterized that the law allows them to recover some additional sum as damages. In arriving at such a figure it would seem reasonable and good social policy in cases such as these to grant such an amount that a plaintiff would be encouraged to bring the dispute to the courts for settlement.

That sum we believe, then, should be based on the added expenses to which the plaintiffs were put but for which they were not reimbursed by the jury's award of compensatory damages. Specifically we refer to plaintiffs' necessary and reasonable attorney fees and other related expenses not ordinarily recoverable. We conclude it can reasonably be said that a sum approximating these expenditures incurred in conducting this successful litigation would constitute an adequate award

as exemplary damages. (*See* "Advisory Fee Schedule of the Idaho State Bar.")

We note that ordinarily a successful plaintiff is not entitled to recover his attorney fees in a tort action in Idaho. In reviewing an appropriate exemplary damage award this Court can consider the added expense and trouble the plaintiff has sustained. In a trespass to land action the Kansas Supreme Court permitted the jury to consider in its award of punitive damages the plaintiff's attorney fees, expert witness fees, and the plaintiff's inconvenience and time. Brewer v. Home-Stake Production Co., 200 Kan. 96, 434 P.2d 828, 30 A.L.R.3d 1435 (1967). *Accord,* Restatement of Torts § 908, comment e. The other jurisdictions permitting the jury to consider plaintiff's litigation expenses as part of exemplary damages are listed in Annotation, 30 A.L.R.3d 1443.

We do not adopt, however, the rule that the award must necessarily be no more than attorney fees. Triangle Sheet Metal Works, Inc., v. Silver, 154 Conn. 116, 222 A.2d 220 (1966). There is room for some additional amount to reimburse plaintiffs for their inconvenience such as for their time and efforts maintaining this action. But we emphasize that in cases which fall in the third category delineated above, the total amount should not ordinarily be larger.

It is the conclusion of the Court that the district court erred in not granting the defendant's motion to amend the judgment notwithstanding the special findings by the jury by reducing the award of exemplary damages to $2,000. I.C. § 1–205; I.R.C.P. 50(b). That portion of the judgment is reversed and the cause remanded with directions to the district court to enter judgment accordingly. Costs to appellant.

DONALDSON and SHEPARD, JJ., and MAYNARD, D. J., concur.

McQUADE, Chief Justice (concurring and dissenting).

The majority opinion represents a commendable attempt to establish useful criteria for review of exemplary damage awards in civil actions. However, I cannot concur in the majority's treatment of attorney's fees as an element in measuring the permissible awards.

The majority opinion discusses three categories of exemplary damage cases, and places the present action in a residuary class which involves neither repeated anti-social conduct for profit nor patterns of behavior threatening or inflicting actual physical harm. Noting that this Court in the past has not favored large exemplary awards in this class of cases, the majority states that

> "it would seem reasonable and good social policy in cases such as these to grant such an amount that a plaintiff would be encouraged to bring the dispute to the courts for settlement."

This amount is specified as the plaintiffs' reasonable attorney fees and related expenses. While it appears that the majority intends this sum to be a ceiling on recovery of exemplary damages, it is clear that the enunciated policy, of encouraging plaintiffs to bring actions in this category, would be defeated unless the sum also served as an approximate recovery floor.[1] Of course, a jury that finds grounds for exemplary damages will not often award an amount substantially less than the majority would permit. A greater award is more likely, as evidenced by the present case. Consequently, under the majority opinion, reasonable attorney's fees and related expenses do not function merely to *limit* exemplary damages awarded on other punitive grounds; rather, they *are* what the majority terms "exemplary damages." But furthermore, it is clear that these damages are not truly exemplary. In reality, they

---

1. The difficulty in discerning the majority's intent is compounded by their reduction of the exemplary damage award to $2000 in the instant case without explanation of how that figure was derived.

are *compensatory*; they are awarded to encourage plaintiffs to initiate this type of litigation, by reimbursing certain of their "out of pocket" expenses.[2]

The United States Supreme Court has twice held that attorney's fees shall not be awarded under the label of exemplary damages.[3] These holdings apply the general rule, that a successful litigant may not recover attorney's fees from the loser absent a contrary agreement by the parties or express statutory provision.[4] Several court-made exceptions, later codified in a number of jurisdictions, have been recognized in actions to recover for malicious prosecutions, wrongful injunctions, wrongful attachments or garnishments, breach of official duty, and the like.[5] However, cases holding in favor of attorney's fees as exemplary damages have generally avoided open conflict with the established rule.[6] An illustration is supplied by Brewer v. Home-Stake Production Company,[7] on which the majority rests great weight. In that decision, the Kansas Court acknowledged "that attorney's fees * * * are not to be allowed or taxed as costs in the absence of express statutory authorization."[8] However, it held that the jury could include counsel fees in the total award of exemplary damages, and insisted that such inclusion was not to compensate the plaintiff but to punish the defendant. At best the distinction is elusive; and in the present case under the majority's scheme, where exemplary damages are co-extensive with reasonable attorney's fees and related expenses, the distinction simply does not exist. Again, it is clear that behind the exemplary damage façade the majority is offering successful plaintiffs additional compensation by broadening the scope of recoverable costs.

In so doing, the majority has usurped a firmly established function of the legislature. Prior to the thirteenth century in England there was no recovery by litigants of costs in any form. Recovery of costs was initiated not by the courts but by the Statute of Gloucester (1275),[9] which provided that one who obtained a writ entitling him to possession of disputed land could "recover against the Tenant the Costs of his Writ purchased, together with * * * Damages." These "Costs" were interpreted to include attorney fees;[10] and the principle was expanded by successive statutes until, in 1697, full costs of the action were awarded to plaintiffs who sued for malicious and willful trespass, the subject

2. "[I]t is difficult to see why such expenses should be allowed under the head of exemplary damage. The plaintiff's counsel fees are an expense incurred by him, and their reimbursement to him brings the measure of damages back toward the standard of compensation. It is an item of compensation, indeed, not usually allowed; but, nevertheless, it is really compensation." 1 Sedgwick on Damages § 234, at 470 (9th Ed.1912).

3. Oelrichs v. Spain, 82 U.S. 211, 15 Wall. (83 U.S.) 211, 21 L.Ed. 43 (1872); Day v. Woodworth, 54 U.S. 363, 13 How. (55 U.S.) 363, 14 L.Ed. 181 (1851).

4. *See, e. g.,* the cases collected in Annotation, 30 A.L.R.3d 1443, 1447–1448. *Cf.* I.C. § 3-205, authorizing recovery of attorney's fees if the parties previously have so agreed by contract.

5. Quint, Attorney Fees—An Item of Damage, 41 L.A.B.J. 367 (1966); Comment, Attorney's Fees as an Element of Damages in Louisiana, 34 Tulane L.Rev. 146 (1959); Note, Attorney's Fees as an Element of Damages in Alabama, 4 Ala.L. Rev. 93 (1951); Comment, Counsel Fees as an Element of Special Damage, 29 B.U.L.Rev. 438 (1949).

6. See, e. g., the cases cited by the majority in 30 A.L.R.3d at 1448–1453.

7. 200 Kan. 96, 434 P.2d 828, 30 A.L.R.3d 1435 (1967).

8. 434 P.2d at 830.

9. 6 Edw. I, c. 1 (1275).

10. Coke, 2d Institutes, 288; *quoted in* Goodhart, Costs, 38 Yale L.J. 849, 852 (1929).

matter of the instant case.[11] This statutory development preceded by nearly two centuries the evolution in the courts of exemplary damages in their present form.[12]

The statutory origin of recoverable costs, including attorney fees, explains the general rule against awarding such fees in the absence of agreement or statute. No section of the Idaho Code authorizes the award of attorney fees as envisioned by the majority, and, of course, there was no agreement or stipulation in this case. It is important further to note that the legislature has frequently confronted the general issue of attorney fees, and has authorized or prohibited their award in a variety of other circumstances.[13] In 1970 the legislature enacted I.C. § 12–120, authorizing award of reasonable attorney fees in all civil actions for injury to person or property where damages pleaded did not exceed $1,500; but it refrained from extending the authorization to cases more closely resembling the present one.

Noted legal scholars have advocated that each state in this country develop a cost recovery system similar to that found in Britain.[14] However, the issues involved are permeated with considerations of public policy and properly are fields for legislative inquiry.[15] I regretfully conclude that the majority in this case has contaminated its otherwise admirable treatment of standards for reviewing exemplary damage awards, by overreaching the constitutional separation of powers on the question of attorney's fees.

---

11. 8 & 9 W. III, c. 11, f. 4 (1697).

12. *See* Note, Exemplary Damages in the Law of Torts, 70 Harv.L.Rev. 517 (1957).

13. I.C. § 28–35–202 (Uniform Commercial Credit Code, authorizing recovery by debtor in several types of actions against creditor who acted wrongfully); I.C. § 12–120, discussed *infra*; I.C. § 54–1929 (laborer's and materialmen's claims on public works projects); I.C. § 30–1446 (violations of Securities Act); I.C. § 45–513 (mechanic's lien); I.C. § 62–409

(railroad killing stock); I.C. § 11–402 (redemption of property from execution sale); I.C. § 45–605 (wages); I.C. §§ 72–611, 702 (workmen's compensation).

14. E. g. Charles T. McCormick, McCormick on Damages, 255–259 (1935).

15. McCormick, *supra* note 14; Goodhart, *supra* note 10. *See also* the calls for legislative action in the Tulane and Alabama law review notes cited at note 4, *supra*.