**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LEX D. WALTERS,
Plaintiff-Appellant,

v.                                                                    No. 97-2543

PANTRY INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
William M. Catoe, Jr., Magistrate Judge.
(CA-96-669-8-13)

Submitted: January 29, 1999

Decided: February 19, 1999

Before WILLIAMS, MOTZ, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Joseph A. Rhodes, Jr., HAYNSWORTH, BALDWIN, JOHNSON &
GREAVES, Greenville, South Carolina, for Appellant. Andrew S.
O'Hara, MOORE & VAN ALLEN, P.L.L.C., Charlotte, North Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Lex D. Walters appeals from the jury verdict awarding him actual damages but denying punitive damages from the Defendant, The Pantry, Inc. (the Pantry). For the following reasons, we affirm.

Walters purchased commercial property on Highway-72 Bypass in Greenwood, South Carolina with the intent of building a full-service car wash on the property. The property is adjacent to the Pantry, Store Number 340. The Pantry operates a combination convenience store and gasoline station on its property. In 1989, the Pantry discovered that its property was contaminated by gasoline. Further investigation revealed that the contamination had migrated onto Walters's property. When Walters learned that his property had been contaminated with gasoline and gasoline products, his project came to a halt because no bank would approve financing for his project.

Walters sued the Pantry for discharging gasoline and gasoline constituents from its Store Number 340 onto his property and for failing to clean up the resulting soil and groundwater contamination in a timely fashion. Walters sued under theories of negligence, negligence per se, and trespass. He sought both actual and punitive damages. Walters filed his complaint in federal district court based on diversity jurisdiction. Both parties consented to proceed before a magistrate judge, electing to appeal directly to this court.

The evidence revealed that the Pantry experienced approximately sixty releases of gasoline from underground storage tanks at its convenience stores in various states. The Pantry discovered nineteen of the releases before it discovered the release at Store Number 340 and the other forty releases afterwards.

In response to interrogatories by Walters, the Pantry created documents identifying every Pantry store at which a release of gasoline had been discovered, which included the store address, the type of contamination, when the contamination was discovered, how it was discovered, the nature of the remediation, if any, and the cost of remediation.

2

Prior to trial, the Pantry filed a motion in limine to exclude evidence of the presence of petroleum contamination at any of its stores other than at Store Number 340. The Pantry also sought to exclude evidence of money it spent on cleaning up its contaminated sites and money spent by any state or commonwealth to clean up those sites. Walters responded by explaining that the evidence of other releases and the reimbursements from the South Carolina Department of Health and Environmental Control (DHEC) was relevant to establishing the Pantry's intent with regard to its environmental strategies, and thus, was highly probative of his right to punitive damages.

At trial, the district court excluded all information regarding the cost of remediation, except at Store Number 340. The court also excluded all forty of the interrogatory responses regarding releases that were discovered after the discovery of the Store Number 340 release. However, the court admitted evidence of the eighteen interrogatory responses regarding releases that were discovered by the Pantry prior to the release at Store Number 340. Walters also attempted to offer into evidence documents from the DHEC showing all reimbursements by the DHEC to the Pantry and its environmental consultant for assessment and cleanup actions at its various store locations. The court admitted the evidence of reimbursements for Store Number 340, but excluded the evidence for all other sites. The court also excluded a computer printout from DHEC that listed all of the Pantry's contaminated sites in South Carolina, again on the grounds that only those sites that had been identified before Store Number 340 was identified were admissible.

Following trial, the jury returned a verdict of $50,000 in actual damages in favor of Walters, but declined to award punitive damages after finding that Walters had not established by clear and convincing evidence that the Pantry's conduct was willful, wanton, or reckless, including a consciousness of wrongdoing. Walters moved for a new trial, but the district court denied the motion.

Walters appeals the jury's failure to award punitive damages on the theory that the district court improperly excluded evidence which showed that the Pantry had acted in a willful, wanton, and reckless manner and with a conscious disregard for Walters's rights. See Taylor v. Medenica, 479 S.E.2d 35, 46 (S.C. 1996) (in order for a

3

plaintiff to recover punitive damages, there must be evidence the defendant's conduct was willful, wanton, or in reckless disregard of the defendant's rights); Gilbert v. Duke Power Co., 179 S.E.2d 720, 723 (S.C. 1971) (punitive damages are awarded to punish wrongdoers for reckless, willful, wanton, or malicious behavior). Specifically, Walters contends that he was precluded from establishing the Pantry's intent, which was crucial to his receiving punitive damages. He argues that in order to be entitled to an award of punitive damages, he needed to prove the intent of the Pantry and evidence crucial to establishing the Pantry's intent included repeated releases of environmental contaminants over a long period of time, some occurring after the release that contaminated Walters's property. Walters also claims that evidence crucial to establishing the Pantry's motive for not improving its environmental program included financial incentives in the form of near-total reimbursement for cleanup costs from the DHEC.

Under Fed. R. Evid. 404(b), evidence of other acts is not admissible to prove the character of a person, in this case the Pantry, in order to show action in conformity therewith, but it may be admissible for other purposes, such as proof of motive, intent, or absence of mistake or accident. See generally Pike v. South Carolina Dep't of Transp., 506 S.E.2d 516, 520 (S.C. Ct. App.) (discussing South Carolina rules of evidence). However, under Fed. R. Evid. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We review the district court's evidentiary rulings for an abuse of discretion. See WLR Foods, Inc. v. Tyson Foods, Inc., 65 F.3d 1172, 1174 (4th Cir. 1995). Because the district court has first-hand knowledge of the trial proceedings, the district court should be afforded wide discretion in determining whether evidence is unduly prejudicial and the district court's evidentiary determination should not be overturned except under extraordinary circumstances. See United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996).

A review of the record reveals that the district court excluded the evidence of the forty releases that were discovered after the one at

4

Store Number 340 because it was highly prejudicial. The probative value of the evidence as it relates to the Pantry's intent is questionable. The responses show that releases of gasoline were discovered at fifty-nine locations, under different circumstances, in five different states, and that in excess of ten different remediation efforts were implemented at those locations. The documents do not reflect the regulatory requirements that effected the choice of remediation at the particular sites, what remediation efforts were considered and determined to be inappropriate for each site, or to what extent the chosen remediation effort was effective. Most importantly, the documents do not establish the cause of the release or the party responsible for causing the release. Lastly, the documents do not reflect the amount of the cost of remediation paid by the Pantry or the state in which the release occurred.

The district court concluded that the slight probative value of the evidence was outweighed by its prejudicial nature. The district court stated, "I don't want to open up forty other cases. We're only trying one here." The district court further stated that admitting evidence of the fourteen releases that were discovered before the one at Store Number 340 was "fair," but that he could not "try sixty different or sixty or seventy different spills in this one case." The court recognized the factual complexity in litigating sixty different releases and their relevance to the particular release at Store Number 340 when he stated that, "[i]t would be like trying sixty automobile accidents . . . [i]nvolving the same car." The court further stated that in this case, the Pantry Stores were located in different states, under different regulations, and different facts were involved in the releases. Also, it was unknown where the leak at Store Number 340 came from. The district court weighed the risks of confusion, misleading the jury, delay, and waste of time in ruling that it did not want to convert this trial into one in which the Pantry would have to explain the many differences between the forty additional releases and the one at Store Number 340. Thus, the district court did not abuse its discretion in excluding this evidence.

Walters also claims that the district court erred in excluding evidence of reimbursements made by DHEC to the Pantry for work completed in response to petroleum releases at various sites throughout South Carolina. The district court admitted the financial history of

5

remediation at Store Number 340, but held the evidence of payment at all other sites in abeyance for reconsideration if the jury determined that Walters was entitled to punitive damages. The evidence of costs reimbursed at others stores was prejudicial because it was irrelevant to the measure of damages attainable by Walters and with regard to remediation costs at Walters's property. At trial, Walters argued that this evidence was necessary to show the jury that the Pantry made a decision to rely on the reimbursement funds which went towards showing its degree of culpability. The district court correctly found that the Pantry's degree of culpability would only be relevant if the jury awarded punitive damages. Because the jury found that Walters did not establish willful, wanton, or reckless conduct by the Pantry, the district court did not abuse its discretion in excluding this evidence.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6